### SEAWELL v. CAROLINA CENTRAL RAILROAD CO.

(Filed June 10, 1903.)

1. EVIDENCE—*Sufficiency of Evidence—Passengers—Carriers—Railroads.*

In this action against a railroad company to recover damages for an assault by its agents and employees while the relations of passenger and carrier existed between the plaintiff and the railroad company, the evidence justifies the refusal of a nonsuit by the trial judge.

2. NEW TRIAL—*Misconduct at Trial—Trial—Judge.*

It is not improper for the trial judge, during the trial and while reading the evidence to the jury, to move to a table within the bar in front of the jury.

3. NEW TRIAL—*Misconduct at Trial—Trial—Judge—Witness.*

It is not prejudicial for the trial judge to order a witness for the defendant into custody for laughing at certain evidence offered by the plaintiff, such witness afterwards stating that he was not laughing, but coughing, and the court taking no further notice of the matter and releasing him from custody.

ACTION by H. F. Seawell against the Carolina Central Railroad Company, heard by Judge *W. S. O'B. Robinson* and a jury, at September Term, 1902, of the Superior Court of MOORE County.

#### THE ISSUES.

1. Was the plaintiff a passenger of the defendant company, as alleged in the complaint?

2. Did the defendant company, through its agents and employees, assault, or aid, abet and encourage an assault, on the plaintiff, as alleged in the complaint?

3. Did the defendant company neglect, fail and refuse,

through its agents and employees, to protect or offer to protect, the plaintiff against the assault as alleged?

4.   What damage is the plaintiff entitled to recover?

The jury answered the first, second and third issues "Yes," and the fourth issue "Four thousand and five hundred ($4,500) dollars."

From a judgment for the plaintiff, the defendant appealed.

*W. J. Adams, U. L. Spence* and *Douglass & Simms,* for the plaintiff.

*J. D. Shaw, Day & Bell, Shepherd & Shepherd* and *Murchison & Johnson,* for the defendant.

CLARK, C. J.   The complaint alleges "that on or about the 2nd day of June, 1900, the plaintiff, who had previously purchased for a valuable consideration a mileage ticket, then in his possession, which entitled him to transportation on said Carolina Central Railroad, entered upon the premises of the defendant at its station in the town of Shelby, in the County of Cleveland, for the purpose of boarding as a passenger a train of the defendant company, which, according to the schedule and time-table of the defendant, as plaintiff is informed and believes, was expected to arrive at said station within a short time thereafter, with a view to traveling on said train from said station to Hamlet, in Richmond County. That while the plaintiff was thus on the premises of the defendant awaiting the arrival of said train, and between the time of the arrival and departure of said train, and while the plaintiff was in the act of entering said train for the purpose of riding as a passenger thereon from said town of Shelby to said town of Hamlet, and while the relation of passenger and carrier subsisted between the plaintiff and the defendant, as the plaintiff is advised and believes, the de-

fendant company, through one Walter Ramseur and Paul Carroll, who, as plaintiff is informed and believes, were then the agents and employees of the defendant in said town of Shelby, and had charge of the business and premises of the defendant at said station, and were then and there engaged in the service of said company, together with other persons to the plaintiff unknown, wrongfully and unlawfully did assault and beat the plaintiff, striking him on the face and on various other parts of his person with eggs, and did otherwise maltreat the plaintiff, and in the presence of the plaintiff and of various other persons did use indecent, insulting and opprobious language with reference to the plaintiff while at said station, by reason of which assault, battery and maltreatment the plaintiff was obliged to ride on said train in the presence of various passengers from said station in Shelby to the city of Charlotte in clothing which was badly soiled by the impact and bursting of said eggs, and thereby rendered uncomfortable, disagreeable and for the time unfit for use on said train, or other public place, or in the presence of said passengers or other persons, and by reason of which assault, battery and other maltreatment the plaintiff is greatly humiliated, injured in body, mind and reputation, and damaged in a large sum to-wit, in the sum of ten thousand dollars."

For a second cause, the same state of facts are set out save that instead of alleging the active participation of the agents of the defendant, it is averred that the assault, in the manner and under the circumstances as above described, was committed by various persons to the plaintiff unknown, in the presence of Walter Ramseur and Paul Carroll, agents of the defendant, who then and there had charge of the premises of the defendant at said station, "and the defendant neglected, failed and refused, through its agents and employees, to restrain the conduct of said persons or in any manner to interfere with them, or to protect or to offer protection to the

plaintiff against said assaults, insults and maltreatment, but on the contrary the defendant, through its said agents and employees, encouraged, aided and abetted the same."

The chief exception relied on is to the refusal of the motion to non-suit the plaintiff. The evidence showed that he had bought a ticket and was at the station to take the train, and while so awaiting was assaulted in the manner stated in the complaint. "When a person comes upon the premises of a railroad company at the station, with a ticket, or with the purpose of purchasing one, he becomes a passenger," (*Tillett v. Railroad,* 115 N. C., 665; *Hansley v. Railroad,* 115 N. C., at p. 603; 32 L. R. A., 543; 44 Am. St. Rep., 474), and the right to care and protection begins. *Dodge v. Steamboat Co.,* 148 Mass., 207; 2 L. R. A., 83; 12 Am. St. Rep., 541. It is the duty of a carrier to protect its passengers from injury, insult, violence and ill-treatment from its servants, other passengers or third persons. *Daniel v. Railroad,* 117 N. C., 592; *Williams v. Gill,* 122 N. C., 967; *Cogdell v. Railroad,* 124 N. C., 302; *Owens v. Railroad,* 126 N. C., 139; 78 Am. St. Rep., 642; *Palmer v. Railroad,* 131 N. C., 250; *Steamboat Co. v. Brackett,* 121 U. S., 637; 5 Am. & Eng. Enc. (2nd Ed.), 541; *Traction Co. v. Lane* (Tenn.), 46 L. R. A., 549. As far back as 1883, this doctrine was thus concisely stated by Ruffin, J., in *Britton v. R. R.,* 88 N. C., at p. 544, in terms ever since deemed settled law. "The carrier owes to the passenger the duty of protecting him from violence and assaults of his fellow-passengers or intruders, and will be held responsible for his own or his servant's neglect in this particular, when, by the exercise of proper care, the acts of violence might have been foreseen and prevented; and while not required to furnish a police force sufficient to overcome all force, when unexpectedly and suddenly offered, it is his duty to provide ready help sufficient to protect the passenger against assaults from every quarter which might reasonably

be expected to occur under the circumstances of the case and the condition of the parties." The defendant in its answer admits that Ramseur was its employee, but alleges that Carroll was a servant temporarily employed by Ramseur. There was evidence that Ramseur, the station agent, knew the plaintiff, that he lived east of Shelby, and the next train was the one going east; that Ramseur saw the plaintiff on the platform at which passengers would board the train, with his traveling bag ten minutes before that train arrived; that Ramseur was on the platform of the depot when the first eggs were thrown at the plaintiff; that Ramseur came out of the depot building with the crowd by whom the eggs were thrown at the plaintiff from the company's platform, and that Ramseur was there when the last eggs were thrown and was laughing because the eggs were thrown, and soon after the first shower of eggs Ramseur said, "You did not egg him enough," and that the plaintiff had a mileage ticket.

As to Carroll, there was evidence that he was there to do anything Ramseur ordered and especially to load and unload baggage; that he came out of Ramseur's office and threw an egg at the plaintiff, and that this was one of the first eggs thrown at him; that Carroll also threw the last egg. There was also evidence that the crowd was egging the plaintiff and laughing and jeering at him and pelting him with eggs in plain view of Ramseur, and that he neither did nor said anything to prevent it, but simply laughed; indeed, Ramseur admitted in his testimony that he offered no remonstrance to the crowd and that he waved his hands at the plaintiff and laughed as the train moved off. There was also evidence that Thrower, the conductor, was within fifteen or twenty feet of the plaintiff and offered him no protection; that no other agent or employee of the defendant offered him any protection; that Ramseur and Carroll were in the crowd on the platform, when some one in the crowd said "Leave here, you

Populist dog, you suck eggs, I see them on you," the whole
crowd laughed and jeered, Hamrick calling out, "Put that
suck-egg dog off at Buffalo and let him wash himself," that
Ramseur, the station agent, nor Wells, the assistant agent,
nor any one else in the service of the company, made any ef-
fort to stop the assault or insult, and that Ramseur, Wells
and Carroll joined in the laughter at the insults and assault;
that the plaintiff was just opposite Ramseur's office when the
egging occurred; that the egging crowd went into Ramseur's
office several times before the beginning of the assault and
came out of the office with Ramseur immediately before the
assault.

There was evidence contradictory of some parts of the
above evidence, but upon a motion to non-suit the court can
only consider the evidence favorable to the plaintiff and in
the most favorable light for him.　The evidence was properly
submitted to the jury to determine the truth of the contro-
verted matters of fact.

The exceptions to evidence do not require discussion and
indeed were not much pressed, here.　The charge was as fol-
lows, but the exceptions entered thereto are without merit,
and indeed they are omitted from the defendant's brief, ex-
cept the last exception:

### THE CHARGE.

This is an action brought by the plaintiff against the de-
fendant to recover damages for an assault made upon him
by its agents and employees while the relations of passenger
and carrier existed.　This is his first cause of action.　The
burden is on the plaintiff to satisfy you by the greater weight
of the evidence that the relationship of passenger and carrier
existed, and if you find as a fact from the evidence, and by
the greater weight thereof, that the plaintiff had a mileage
book entitling him to passage over the defendant company's

road, and that he came to the depot of the defendant ten or fifteen minutes before the departure of the train with the purpose to take passage on said train and was at the place where passengers usually assemble for this purpose of boarding the train then you will respond "Yes" to the first issue. If the plaintiff has failed to so satisfy you, you will respond to the first issue "No," and will not consider the other issues (To this the defendant excepted.)    Eleventh exception.

In passing upon the second issue the burden is on the plaintiff to satisfy you by the greater weight of evidence that the assault was committed by the agents and employees of the defendant company, or that they aided and abetted and encouraged said assault, and if the jury find as a fact from the evidence and by the greater weight thereof that the agents and employees of the defendant company either assaulted or aided, abetted or encouraged such assault upon the plaintiff while acting within the general scope of their employment and acting within scope of employment means while on duty as agents and employees of defendant company, you will respond "Yes" to the second issue; if not so satisfied you will respond "No" to said issue.    (To this the defendant excepted.)    Twelfth exception.

For a second cause of action the plaintiff alleges, that while the relationship of passenger and carrier existed he was assaulted at the depot of the defendant company, while he was there for the purpose of taking passage on defendant's train and at the place where passengers assemble for the purpose of boarding the train, and that the agents and employees of defendant after they had notice of said assault made upon him by the persons who were at the depot, failed and neglected to afford to him the assistance and protection which was their duty to do, provided the jury respond to the first issue in the affirmative.    The burden is on the plaintiff to satisfy you by the greater weight of the evidence of the fact

that the agents and employees of the defendant company had notice of the purpose on the part of those who assaulted the plaintiff and had an opportunity to offer aid and protection to the plaintiff, and failed and neglected to do so, and if the plaintiff has so satisfied you then you will respond "Yes" to the third issue, and if not so satisfied you will respond "No" to said issue. (To this the defendant excepted.) Thirteenth exception.

If the jury respond "No" to the first, second and third issues then you will not consider the fourth issue, but if the jury respond "Yes" to first issue and respond "Yes" to either one of the issues two and three then you will consider the fourth issue as to damage. In passing upon this issue the court charges you that the plaintiff is entitled to recover such actual damage as will compensate him for the injury to his wearing apparel, for any physical pain he suffered and for the mental anguish he endured by reason of the assault. (To this the defendant excepted.) Fourteenth exception.

The court began reading the evidence to the jury Thursday evening and continued to read until it began to grow dark when the court moved to a table within the bar in front of the jury where there was sufficient light and continued in this place during the remainder of the session Thursday evening. When the court convened Friday morning, the court resumed its position which it had occupied Thursday evening because of the convenience and to save the voice of the court and to enable the jury to hear the testimony and the charge of the court. (Defendant excepted.) Fifteenth exception.

During the trial of this cause, and while the plaintiff was testifying as to his condition during the assault, and how he got the eggs out of his ear and face, some persons in the audience broke out in a loud laugh. The court required the jury to retire, and then stated, during the absence of the jury,

that if there were any persons in the audience who had come for the purpose of laughing this case out of court it would be well for them to retire at once.    That if it were repeated, such unseemly and disreputable conduct would be punished by sending the person or persons engaged in it to jail for contempt of court.    Afterwards some of these parties were called as witnesses for the defendant and testified that they engaged in the egging of the plaintiff.

Later during the hearing of the testimony when Lineberger was sitting on the front seat in full view of the court and while one of the defendant's witnesses was testifying to how he pelted the plaintiff with eggs, the court saw and heard Lineberger break out in a loud laugh and directed the sheriff to take him into custody.    This was done and Lineberger was placed out of view of the jury and remained there until he was called as a witness for the defense as to the character of some of the defendant's witnesses.    At the close of his testimony the witness asked to make a statement to the court and said that he was not laughing; that he had a bad cough and had his head down to cough so as not to make a disturbance; that he was one of the men who condemned what was done. This man was known to the court to be a witness at the time he was ordered into custody, and the purpose was to attach him for contempt, but after his statement the court took no further notice of his conduct and released him from custody.    (Defendant excepted.)    Sixteenth exception.

The judge stated that he saw and heard the witness laugh. The failure of the judge to take any further notice of the matter, or to punish for contempt, was not a matter for exception by the defendant.    This and the preceding exception are evidently on the ground that the trial was prejudiced by the conduct of the judge, but we find nothing therein to sustain the allegation.

Affirmed.