CONNOR and WALKER, JJ., concurring.
This is a petition to rehear this case, which was decided132 N.C. 856. The chief exception relied on is the refusal of the judge to nonsuit the plaintiff, on the ground that there was no evidence. The plaintiff, who was a candidate for Lieutenant-Governor of this State, had gone in his canvass of the State to speak at a town (516) where the party whose candidate he was was unpopular. He went back to the railroad station to take the train, and while at the station, with a mileage ticket in his pocket, awaiting the arrival of the train, a mob came up and threw eggs at him, striking him with them in the face, on the head and other parts of his person, and at the same time using insulting, indecent, and opprobrious remarks. The defendant had three employees present, Ramseur, Carroll, and Wells, and it is not contended that either of them gave the plaintiff the slightest protection or assistance, and it is further clear that even when the train arrived the conductor gave him no protection, but evaded doing so by going back on the train and through the cars to reach the front end of the train to communicate with the local agent. There was evidence tending to show that not only no protection was afforded or attempted by any of the defendant's employees, but that Carroll and Ramseur encouraged the assault, Carroll engaging with the mob (which had come out of the railroad office with Ramseur) in throwing eggs and joining in the cries of the mob, and Ramseur saying they "had not egged him half enough" after the first eggs were thrown.
The Constitution and laws of this State guarantee freedom of speech, and nothing could be more unmanly than a mob assailing one man in such manner for his difference from them in his political opinion. No *Page 404 
right thinking man, here or elsewhere, will express other opinion of the proceeding, and the most that can be said is that it was the act of a mob, for which the community was not responsible. The plaintiff was an invited guest of the defendant and on its premises, a passenger, who, at the invitation of the defendant, had brought a mileage ticket over its road and had gone to the station to take its train. The defendant was a quasi- public corporation, forbidden to make any discrimination in the discharge of its duties to the public other than as provided (517) by the power from whom it holds its franchise to exist and operate its road. It owed to the plaintiff the same protection and courteous treatment it owed to every other passenger. It could not extend this protection otherwise than through its agents and employees. Of the four employees present — Ramseur, Carroll, Wells, and the conductor — not one is shown to have made the slightest attempt to protect the plaintiff, and there is evidence that two of them actively participated in or, at least, encouraged the assault.
A careful examination of all the authorities shows no case, and the appellants cite none, in which, under similar circumstances, the railroad company has not been held liable, unless it exerted what power it could to protect the passenger from the mob. Here, if the agent had taken the passenger into his private office, or offered to do so, had expostulated with the mob, and on the arrival of the train, in company with the conductor and his own employees, escorted him to the train, the eggs would hardly have been thrown, and at any rate the defendant would not have incurred liability for this breach of duty. Or there might have been other attempts to protect the passenger while on its premises, and which the jury might have held sufficient. But here there was none whatever. It was the assaulting mob, not the passenger, whom the agent admitted to his office, and he issued therefrom with a mob at his heels, who immediately began spattering the plaintiff with eggs and abuse. Such attempted intimidation for political opinion's sake cannot be safely permitted, especially by great public corporations holding their franchises in trust, impartially, for all the public.
The cases are uniform, fastening liability upon a common carrier for failure to extend such protection as it can to a passenger against a mob. No one before has questioned that the corporation would be liable (518) when its own agents actively encouraged or participated in the assault by the mob. The law has never been more clearly and accurately stated than by Mr. Justice Ruffin in Britton v. R. R., 88 N.C. at p. 544, 43 Am. Rep., 749, where the plaintiff was a colored passenger. Said Judge Ruffin: "The carrier owes to the passenger the duty of protecting him from the violence and assaults of his fellow-passengers or *Page 405 
intruders, and will be held responsible for his own or his servant's neglect in this particular, when by the exercise of proper care the acts of violence might have been foreseen and prevented; and while not requiredto furnish a police force sufficient to overcome all force, when unexpectedly and suddenly offered, it is his duty to provide ready help sufficient to protect the passenger against assaults from every quarter
which might reasonably be expected to occur under the circumstances of the case and the condition of the parties." For this he cited several authorities. Many others to like purport, but later, were cited by us in our former opinion, 132 N.C. at p. 859. Among the numerous additional cases are R. R. v. Jefferson, 89 Ga. 554; 17 L.R.A., 571; 32 Am. St., 87; R.R. v. Burke, 53 Miss. 200; 24 Am. Rep., 689; Spohn v. R. R., 87 Mo., 74;R. R. v. Pillsbury, 123 Ill. 9; 5 Am. St., 545; R. R. v. Hinds, 53 Pa. St., 512; 91 Am. Dec., 224; Krantz v. R. R., 12 Utah 104; 30 L.R.A., 297; 1 Thompson Neg., sec. 968, and many other cases where the liability was for omission to make reasonable efforts to protect the passenger from assaults by other passengers or by a mob. There is not, and could not be, any authority holding a common carrier irresponsible when its agents participated in or encouraged the assault. The station and cars of a railroad are quasi public, where every one who pays his fare has a right to be, and if such corporations, permeating everywhere as they do, can with impunity, through its employees, assault or permit assaults on its passengers for the political opinions entertained by them (as in this case), or for any other reason, the result would be deplorable (519) in the extreme.
Only one point requires notice, and that only because it was pressed with great zeal on the argument. A witness (McBryde) having testified to evidence tending to show that he saw Carroll, one of the defendant's employees, throw an egg at the plaintiff, further stated, under objection, that he hallooed and told the plaintiff, in the presence of the crowd, "just right afterwards." On cross-examination McBryde said it was "a minute afterwards." This was not excepted to, nor was his statement thereupon, that he told Seawell that he saw the man throw the egg, excepted to. If it had been, the first statement of the time may, nevertheless, have been more correct. In such circumstances the passage of time cannot be very accurately measured. But had the evidence been duly excepted to, it was properly received, not only as corroborative evidence, but as substantive testimony, as a part of the re gestae. Harrill v. R. R., 132 N.C. at p. 659; Bumgardner v. R. R., ibid., 438. The egg-throwing was not over, for McBryde said he told the plaintiff after Carroll threw the first egg, that the plaintiff shook his cane at Carroll, and thereafter he saw Carroll throw another egg; but if the egg-throwing had *Page 406 
been over, the abuse and insults were not, for even as the train rolled off, carrying the plaintiff, the crowd was jeering the plaintiff, the station agent and Wells and Carroll were all laughing at his pitiful plight, and one of the crowd yelled after him, "Put that suck-egg dog off at Buffalo and let him wash himself." The statement of McBryde to the plaintiff was made before the train had started to move, and he says Carroll threw another egg at the plaintiff, just as it stated. The exclamations of third parties present are as much a part of the res gestae
as those of the parties themselves. S. v. McCourry, 128 N.C. 598; Harrillv. R. R., supra.
Even if the exception had been duly taken and the evidence had been erroneously admitted, yet if it had been rejected there was sufficient (520) evidence to refuse the nonsuit, which is the point now before us, in view of the fact that the defendant's station agent admitted in his testimony that no steps whatever were taken to give the plaintiff any protection, and the evidence tending to show that the railroad employees aided, abetted, and encouraged, and even shared in the assault. Besides, from the other facts in the evidence, and not denied, such error (if it had been error) would have been too minute and immaterial to justify a new trial.
No court of justice can tolerate such conduct as that of the agent of the defendant towards the mob in its assault upon the plaintiff, while entitled to the protection of a passenger at its hands.
Petition dismissed.