Action to recover damages for personal injuries caused by alleged negligence on the part of defendant company. There was evidence on the part of the plaintiff tending to show that on or about 9 November, 1909, the plaintiff having purchased a ticket at Warsaw, N.C. with a view of returning to Mt. Olive on the 10:30 train of defendant company, was seriously injured in endeavoring to get aboard said train as it was leaving the station yard; that the train in question was twenty minutes late, and plaintiff having bought his ticket drove with a friend around the town of Warsaw, and having returned, awaited the arrival of the train on the station yard in a few feet of the main track and of the train when it came up. The incoming passengers left the train and baggage was unloaded. In unloading, the defendant's employees placed a trunk on the platform very near the train; that the engine and the baggage car were opposite plaintiff when the train came to a standstill, and plaintiff started down to board the train and "had reached front *Page 67 
end of second-class car. I moved up to get hold of the rails of the platform. Another gentleman ahead stepped on the step. He was helping on a lady and child. I took hold of the rear end of the next forward rail, which was the car for colored people. I caught (82) hold with both hands. The porter had stepped right ahead of me on the step. Conductor gave signal to leave. I saw it and stepped my left foot on the bottom step. The porter was on the second step. He was looking over my head. I spoke to him and told him to move out of the way. I repeated it a time or two. He did not appear to hear me — paid no attention to me. The train moved away at fast speed. That left me standing on the step with my left foot forward and right foot hanging down. Several yards up the track there was a trunk sitting up on end, right by the side of train. The trunk struck my right leg from my knee down and knocked me off the step; knocked me pretty hard; knocked my right hand loose. I still held to the rail with my right hand. When I came down I struck on the crotch of the steps with the small of my back, left side. My hand slid down on the rail and I descended low enough for me to see the track rails on that side. I caught with my left hand the cog to the brake at the platform and was trying to get straight. The conductor came up and asked me if I was hurt. I replied, `Do you think I am iron?' I did not know the conductor. I was badly hurt in my left side, and in about five hours I was very sick, and was in bed seven weeks. I have been in bed two-thirds of my time since. Dr. Kornegay saw me about five hours after I was hurt, and he has been attending me ever since."
There was evidence further that the occurrence as it took place was in view of the conductor and other employees of the train; that the conductor called "All aboard," and immediately the train started. Speaking to the significance of this call the conductor testified, "When I make this announcement `All aboard' I mean, to give notice to those who are not on the train to get on and that, I understand, to be the general meaning." There was evidence on part of defendant that plaintiff was at southeast corner station platform talking to some one when call "All aboard" was made, and the train after having waited the full time at the station started; that he approached and was injured in the endeavor to get on a moving train. The porter testifying for defendant denied that he in any way hindered or obstructed plaintiff. The conductor testifying gave account of the occurrence as follows: "I was (83) conductor on the train. We stopped at Warsaw six or eight minutes. It was transfer point of Clinton Railroad. The train had been at station several minutes before I saw plaintiff. I had assisted passengers off and on, then walked up baggage car two lengths away. I then saw plaintiff. He was at the southeast corner of the station *Page 68 
platform talking with some one who was sitting on a buggy. After the train started I stepped on front end of first coach. Plaintiff attempted to catch rear end of same car. He was walking backwards with both hands raised as if to catch hold of the rails to the platform (which was the right way for him to walk if he was going to catch on to a moving train). It was after he had caught the hand-rail that he came in contact with the trunk. I hollered to him. I think I said, `Look out.' I saw he was going to strike the trunk, but I don't think he heard me. I saw him pull himself up. I then went through the train where he was. I found him in the first car. I asked him if he was hurt, to which he replied, `I think not.' He was ten or fifteen feet from the train when I first saw him coming to the train. It had moved about the distance of one coach when he struck the trunk. It was moving at four miles an hour. I say `All aboard' and hold up my finger and start immediately. If the trunk had not been there he would have made the platform all right. The trunk had just been taken off the baggage car and placed there, and was for Warsaw. The trunks as they are taken off are placed beside the track. I don't know what rule there is as to how long they are to remain there before removal, if there is any."
The Pullman conductor testifying said: "I saw him as I came up the train after it stopped, standing by a buggy. He, I think, got up in the buggy about twenty or twenty-five feet from the train. When conductor called `All aboard' and the train began moving off he jumped from the buggy and ran and caught the train at rear end of the car for colored people. There were some trunks on track. I saw (84) his danger and hollered to him to look out."
The ordinary issues were submitted as to negligence, contributory negligence and damages.
Verdict for plaintiff. Judgment. Defendant excepted and appealed.
After stating the case: Railroad companies, in the performance of their duty as common carriers, are held to a high degree of care in providing at their regular stations places and conditions by which passengers may board and alight from their trains in safety and in keeping such places free from unnecessary obstructions which threaten them harm. This obligation has been illustrated and applied in several recent decisions of the Court, as inSmith v. R. R., 147 N.C. 450; Mangum v. R. R., 145 N.C. 152, 153;Pineus v. R. R., 140 N.C. 450. And the decisions in other jurisdictions and text-writers of authority are in approval of the principle. Ayers v.R. R., *Page 69 158 N.Y., 254; Reese v. R. R., 93 Ill. 662; Hutchinson on Carriers (3 Ed.), secs. 928, 935. In Smith v. R. R., supra, the Court quotes with approval from Hutchinson on Carriers, sec. 128, as follows: "It is the duty of railway companies as carriers of passengers to provide platforms, waiting-rooms and other reasonable accommodations for such passengers at the stations upon such roads at which they are in the habit of taking on and putting off passengers. Their public profession as such carriers is an invitation to the public to enter and alight from their cars at their stations, and it has been held that they must not only provide safe platforms and approaches thereto, but that they are bound to make safe for all persons who may come to such stations in order to become their passengers or who may be put off there by them, all portions of their station grounds reasonably near to such platforms and to which such persons may be likely to go; and for not having provided such stational accommodations and safeguards railway companies have frequently been held liable for injuries to such persons." And in Mangumv. R. R., 145 N.C. 153, Associate Justice Brown, in delivering the opinion said: "It seems now to be almost elementary that one of the recognized duties of a railway company that undertakes (85) to carry passengers is to keep its station premises in a reasonably safe condition, so that those who patronize it may pass safely to and from the cars. Pineus v. R. R., 140 N.C. 450; Wood on Railways, 310, 1341, 1349. This duty extends not only to the condition of the platform itself, whereon passengers walk to and from the trains, but also to the manner in which that platform is allowed by the common carrier to be used. Western v. R. R., 73 N.Y. 595; Wood, supra. The defendant owed a duty to plaintiff, and to all other passengers, to keep its depot platforms used by them as means of ingress and egress free from obstructions and dangerous instrumentalities, especially at a time when its passengers are hurrying to and from its cars," citing Pineusv. R. R., and R. R. v. Johnston, 36 Kansas, 769. Applying the principle we are of opinion that the cause has been correctly decided and no reversible error appears in the record. While not prepared to say that the placing of the trunk in the position shown would under all circumstances constitute negligence, on the testimony presented it is certainly a relevant fact to be considered with other facts and circumstances in determining the question of defendant's responsibility, and this was all the significance given it on the trial below, and in this there was no error certainly of which defendant could complain. Allowing then to this fact only the weight as suggested, the question of defendant's liability was submitted to the jury in three aspects:
1. Whether there was negligence in wrongfully starting the train immediately on the call "All aboard" by the conductor? *Page 70 
2. Did the porter negligently hinder the plaintiff in his effort to board the train?
3. Was there a negligent failure on the part of the defendant's employees to stop the train after plaintiff was discovered by them to be in a position threatening danger?
All of them fairly arising on the testimony and all of them in our opinion given to the jury under correct and intelligent charge. His Honor charged the jury generally: "It is the duty of a railroad company to exercise reasonable care for the safety of persons attempting to board its trains at one of its stations to become passengers (86) thereon, and if there shall be a failure of such duty on the part of the railroad company, and in consequence thereof a person is injured, that would be negligence, and if such negligence is the proximate cause of the injury that would be actionable negligence," and on the first position, among other things said, "When the conductor calls `All aboard,' this is an express invitation to those who have not yet boarded the train to do so, and if the said train moves off after said announcement without giving opportunity to passengers who had placed themselves so near the train that there was a reasonable inference that they intended to become passengers thereon to avail themselves of this invitation, then the moving of said train is a negligent act." And further that if the jury should find by the greater weight of the evidence that the conductor called "All aboard" and immediately started the train without giving plaintiff time, by the exercise of reasonable care, to enter the train, and shall further find that such act was the proximate cause of plaintiff's injury, they would answer the first issue, Yes.
The plaintiff in this instance having purchased his ticket was standing in the station yard, seemingly on the platform, in full view and very near, awaiting the arrival of his train and was clearly a passenger. Clark v.Traction Co., 138 N.C. 77; Tillett v. R. R., 115 N.C. 665; Seawell v.R. R., 132 N.C. 859.
The conductor himself testified that the call "All aboard" is intended to give notice to those who are not on the train to get on, and that such was the general meaning of the term, and well considered authority is in favor of the definition as given by the witness. Lent v. R. R.,120 N.Y., 467; Carr v. R. R., 98 Cal. 366. See a full and informing note to that case in 21 L.R.A. (N.S.), 356.
On authority, therefore, as well as on the "reason of the thing," there was testimony from which a breach of duty here could be inferred and justified the court in submitting this view to the jury. And on the first and second position the court further charged the jury in part as follows: "If the jury shall find by the greater weight of the evidence that the conductor shouted `All aboard,' and contemporaneously gave a *Page 71 
signal for the train to move forward, and the train did immediately move forward, then this was notice on the part of the (87) defendant that it was safe for a passenger who had placed himself near the train, as stated above, to enter said train, and if the jury shall further find that the plaintiff having placed himself near the train accepted said invitation, relying upon it, and was injured by reason of the closeness of the trunk to the railroad, then the defendant was guilty of negligence, and if the jury shall find by the greater weight of the evidence that such negligence was the proximate cause of the injury, they shall answer the first issue, Yes." And further: "If the jury shall find that the porter obstructed the passage of the plaintiff in attempting to board the car, and the plaintiff was unable to board the car conveniently by reason of the closeness of the trunk to the train in conjunction with said obstruction, then the jury shall answer the first issue Yes, and the second issue No." And further, as more especially bearing on the second issue, the court instructed the jury: "That although the plaintiff attempted to enter the train while it was moving off, and had succeeded, with his hands on the hand-rail, in placing one foot on the lowest step, but was prevented from going on up the steps before he reached the trunk from the fact that the porter on the train had preceded the plaintiff, had negligently stepped on the second step, and who saw, or by the exercise of reasonable care could have seen the condition of the plaintiff, and if the jury shall find such to be the facts by the greater weight of the evidence, then the negligence of the porter, which would be imputed to the defendant, would be the proximate cause of the injury, and the plaintiff's negligence in entering the moving train would not be the proximate cause of the injury."
The charge here presents the conduct of the porter in the proper relation to the cause and in terms which give defendant no just ground of complaint. Sharer v. Paxson, 171 Pa. St., 26, is an authority in support of this position.
And on the third view presented the court charged: "If the jury shall find that the conductor saw the plaintiff attempting to board the car and shall further find that he saw the trunk and could by the exercise of ordinary care have stopped the train in time to prevent (88) the injury, then the jury should answer the first issue Yes, and the second issue No." There was evidence that although the train moved off instantly it was going only four miles an hour at the time of the injury and with the powerful appliances now at command, could have been readily stopped, and on this feature of the case the conductor himself testified: "I then saw plaintiff. He was at the southeast corner of the station platform talking with some one who was sitting on a buggy. Plaintiff attempted to catch rear end of same car. He was *Page 72 
walking backwards with both hands raised as if to catch hold of the rails to the platform (which was the right way for him to walk if he was going to catch on to a moving train). It was after he had caught the hand-rail that he came in contact with the trunk. I hollered to him. I think I said `Lookout.' I say he was going to strike the trunk, but I don't think he heard me." And the Pullman conductor testified: "When conductor called `All aboard' and the train began moving off he jumped from the buggy and ran and caught the train at rear end of the car for colored people. There were some trunks on track. I saw his danger and hollered to him to lookout. I caught the front end of the second car, one next the above car, just about the time he caught grab-irons on next platform to me. He struck the trunk standing there."
Under authoritative decisions here and elsewhere, this testimony was, we think, amply sufficient to justify and require that the case be submitted on the doctrine of the "last clear chance." The negligent failure on the part of a person charged to avail himself of the last clear chance to avoid the injury as explained and illustrated in Edge v. R. R.,153 N.C. 212; R. R. v. Stewart, 91 Ala. 421; Straus v. R. R., 86 Mo., 422, and other cases. In what has been said, many of the positions urged upon our attention by the diligent and learned counsel for the defendant have been already adverted to. It was, however, in addition, earnestly contended that the court committed error in refusing to give the following prayers for instructions as made: "If the jury shall find from the evidence that the defendant's train remained at the station at Warsaw, on the occasion on which the plaintiff alleges that (89) he was injured, a sufficient time for plaintiff and all others who desired to do so to have boarded said train, and to have entered into a car with safety, and while the train was not moving, then the defendant was not guilty of negligence, and the jury should answer the first issue, No." And "If the jury shall find from the evidence that the defendant's train remained at Warsaw, on the occasion on which the plaintiff alleges that he was injured, a sufficient length of time to enable the plaintiff and all other passengers desiring to do so to board said train and enter into a car while it was standing still and the plaintiff, instead of boarding said train and entering into a car while it was standing still, delayed to board said train until he knew the signal for departure had been given and the train was just about to start, and that his injury, if he was injured, was caused by such delay he would be guilty of contributory negligence, and they should answer the second issue, Yes," but modified the same by adding thereto, in effect, "And if such delay on part of plaintiff in taking the train was the proximate cause of the injury." On the facts in evidence this modification was entirely proper. Nearly all the facts relied upon by plaintiff in support of his *Page 73 
demand, the starting of the train too soon after the call "All aboard," the act of the porter in hindering the plaintiff's efforts to get aboard, and the failure to stop the train after the danger to plaintiff was or should have been observed by defendant's employees, arose and were chiefly relevant after the train had started on its way. And the court could not, therefore, have made the conduct of plaintiff, in not taking the train until it had started, determinative and controlling, and as in matter of law the proximate cause of the injury. Again it was insisted that recovery should be barred because plaintiff was injured in the endeavor to get aboard a moving train. The general rule is that a passenger or outsider who is injured in the voluntary effort to board a moving train is guilty of contributory negligence, but numerous decisions here and elsewhere recognize exceptions to the rule, and this is especially true when the effort is induced by the direction or advice of the employees of the company, and when the movement of the train does not make it obviously dangerous, giving due and proper regard to the (90) conditions suggested. Owens v. R. R., 152 N.C. 439; Johnstonv. R. R., 130 N.C. 488; Nance v. R. R., 94 N.C. 622; Straus v.R. R., 86 Mo., supra; R. R. v. Stewart, 91 Ala., supra; R. R. v. West,66 Miss. 310; Lent v. R. R., 120 N.Y., supra. The evidence in the case showed that the train having moved off quickly had only reached a speed of four miles an hour when the injury occurred. The call of the conductor "All aboard," as we have seen, was properly construed by his Honor as an invitation to all passengers, who had placed themselves so near as to afford reasonable indication that they intended to become passengers, to "get aboard," and this with the other testimony and circumstances elsewhere stated, presents a case requiring the question of contributory negligence to be submitted to the jury, and the authorities cited are in approval of his Honor's action in doing so. Apart from this and as a further fact the injury was not caused by any of the ordinary dangers incident to the attempt to board a moving train. The conductor himself said, "If the trunk had not been there he would have made it all right," and in that view the effort of plaintiff was not necessarily and of itself the proximate cause of the injury. On consideration of the entire evidence the facts are very similar to those in Talbert v. R. R.,72 S.C. 132, a decision which fully supports the recovery had in the present case.
No error.
Cited: Kearney v. R. R., 158 N.C. 546; Fulghum v. R. R., ibid., 561;Doles v. R. R., 160 N.C. 320; Leggett v. R. R., 168 N.C. 367; Thomas v.R. R., 173 N.C. 496. *Page 74