McRae *vs.* The State of Georgia.

1. That the court at the time an indictment was framed was illegally held, because it had not been adjourned and convened according to law, was not matter which could be taken advantage of by demurrer, but by plea, properly verified, the indictment being regular on its face.

(*a.*) The indictment was certain, full and particular, coming fully up to the requirements of §4628 of the Code.

2. Where, at and before the killing, there was a great riot by many persons who composed a mob, and the accused was one of them, and took part in the riot, incited it, and was in great part responsible therefor, he was liable for each and every illegal act committed by such mob, and what was said and done by the mob, or any of its members, was proper evidence on the trial of the defendant.

(*a.*) There was no evidence submitted by the prisoner showing that, after he joined the rioters, he left or abandoned them before the homicide was committed.

3. Where, after the prisoner was arrested, the parties making the arrest gave him spirituous liquors, and subsequently he offered them twenty dollars to let him escape, this conduct on the part of the arresting party, or of any other party, was highly reprehensible; but, without more appearing, it was not sufficient to exclude from evidence the statements of the accused and his offer to pay for his release.

4. The verdict was in accordance with the evidence.

September 18, 1883.

Criminal Law.  Indictment.  Riots.  Evidence.  Before Judge FORT.  Dodge Superior Court.  November Adjourned Term, 1883.

McRae was indicted, with others, for the murder of J. Q. Howard.  He demurred to the indictment on the ground, among others, that the court at which it was returned was illegally convened, being at the time to which the session of court had been adjourned by the judge by telegram to the clerk.  (This was made a ground of demurrer, but there was nothing in the indictment to disclose these facts.)

The evidence showed, in brief, as follows:

On August 6, 1882, there was a negro camp-meeting in the town of Eastman, and an excursion train brought many to it.  During the day, a difficulty occurred and a negro was killed.  The other negroes seemed to be much excited. Defendant was near the corpse and was gesticulating.  He said that it was a shame; that if they " would stand up to him," they would " have him " before night.  The crowd gathered round him; the body of the dead negro was carried off, and the crowd went down the streets; the noise increased, and the mob became riotous; pistols were fired and threats and loud language were used.  A little later, Howard, whom the crowd claimed to have done the killing, was seen to run down the street, and the mob pursued him, firing pistols at him, hallooing and threatening to kill him.  Defendant was about a hundred yards behind them; he ran after them, and when within about forty yards of the crowd, also fired his pistol.  He joined the crowd and was lost to view.  The mob pursued Howard to the house of one Harrell, insisted on being admitted, threatened to burn the house, searched it, caught Howard, pulled him to the front door, shot him and beat him over the head with clubs and sticks, causing his death.  On October 11, thereafter, defendant was caught in Waycross, about one hundred and forty-six miles away; he was pass-

ing under another name, and denied his own name when arrested. The person making the arrest was not an officer. On the way to Eastman defendant was given some whiskey but the person having him in charge stated that it was not enough to make him drunk. After this, he offered to such person $20.00 to release him.

Defendant offered no testimony. In his statement he denied that he was one of the mob, or that he used a fictitious name, and said that if he offered to pay for a release, he was drunk.

The jury found the defendant guilty as principal in the second degree, and recommended that he be imprisoned for life. He moved for a new trial on the following grounds:

(1), (2.) Because the verdict was contrary to law and evidence.

(3), (4.) Because the court overruled the demurrer to the indictment. [In one ground it is called a demurrer; in the other, a plea in bar. From the record it appears that the first was correct.]

(5.) Because the court admitted evidence that cries of " kill him," " we will have his head," etc., were uttered by members of the crowd; the witnesses were unable to state what individuals uttered the cries.

(6.) Because the court admitted evidence of the change of name and offer of defendant to pay for his release, it appearing that this information was obtained while defendant was in custody and after being furnished with whiskey by the party having him in charge.

The motion was overruled, and defendant excepted.

J. W. HAYGOOD; T. P. LOYD; L. A. HALL, for plaintiff in error.

C. ANDERSON, attorney general; C. C. SMITH, solicitor general, by HARRISON & PEEPLES; D. M. ROBERTS, for the state.

McRae *vs.* The State.

BLANDFORD, Justice.

1. The plaintiff in error was indicted for the murder of J. Q. Howard on 6th of August, 1882. The indictment was demurred to on several grounds. First, because the court, at the time the indictment was found, was illegally held, as the same had not been adjourned and convened agreeably to law. Matter of this kind could not be taken advantage of by demurrer, but by plea properly verified. The indictment contained nothing and omitted nothing which could be taken advantage of by this demurrer; so the court was right in overruling this demurrer.

The indictment was further demurred to on several grounds stated in the record. Upon looking into these grounds of demurrer, and at the indictment, it is certain, full and particular, coming fully up to the requirements of the common law and §4628 of the Code of Georgia, which says that " Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which charges the offence in the terms and language of this Code, or so plainly that the nature of the offence charged may be easily understood by the jury."

2. In this case it appears, from the evidence, that at and before the killing of the deceased, there was a great riot by many persons who composed the mob; it was shown that the accused was one of the mob; that he took part in the riot, and incited it, and was in great part responsible therefor. He was liable for all and every illegal act committed by the mob, and what was said and done by the mob or any of them, was proper evidence to be submitted to the consideration of the jury upon the trial of this defendant. 31 *Ga.*, 236; Lord George Gordon's case, Howell's State Trials, Vol. 21, pp. 486 to 589; 2 Doug., 590; 17 *Ga.*, 356. There was no evidence submitted by the prisoner showing that, after he joined the rioters, he left them and abandoned them before the homicide was committed.

3. After the prisoner was arrested, the evidence shows that the party making the arrest gave the prisoner spirituous liquor, and after this prisoner offered the arresting party twenty dollars to let him escape. This conduct of the party making the arrest, or of any other party, is highly reprehensible, and such conduct cannot but meet with the condemnation of all right-thinking men. The statement of the accused, his offer to pay twenty dollars for his release, was properly admitted in evidence by the court below.

4. The verdict of the jury was in accordance with the evidence, and there was no error in the court below in refusing the new trial upon the several grounds taken in the motion.

Judgment affirmed.