STATE v. McCOURRY.

(Filed May 14, 1901.)

1. EVIDENCE—*Declarations—Res Gestae—Homicide.*

Declarations in the immediate presence of a prisoner, at the instant the fatal blow is given, charging him with having given it, are part of the *res gestae* and therefore competent evidence.

2. ARGUMENT OF COUNSEL—*Questions for Jury—Evidence.*

Statement by trial judge that he did not remember evidence commented on by the State Solicitor was a proper ruling on an objection to such argument.

3. EVIDENCE—*Sufficiency—Homicide—Excusable Homicide—Self-defence.*

Charge of trial judge in this case, that there was no evidence of excusable homicide in self-defence, was correct.

4. EVIDENCE—*Murder—First Degree—Second Degree—Instructions.*

A refusal to charge that in no view of the evidence can the jury find a verdict of guilty of murder in the first degree, will not be reviewed when the prisoner was found guilty only of murder in the second degree.

5. EVIDENCE—*Manslaughter—Instructions.*

Charge that if deceased only took a rock from his pocket without attempting to throw it, or without prisoner seeing him draw it, would not reduce the killing to manslaughter, was proper.

6 MURDER — *Presumption — Malice — Express Malice — Deadly Weapon.*

The requested instruction in this case on the doctrine of express malice arising from the use of a deadly weapon was properly modified by the court.

INDICTMENT against Elijah McCourry, heard by Judge *W. B. Council,* at Fall Term, 1900, of the Superior Court of YANCEY County, on appeal from the Western Criminal District Court. From a judgment sustaining the judgment of the Criminal District Court, the defendant appealed.

*Robert D. Gilmer,* Attorney-General, for the State.
*C. M. Busbee,* for the defendant.

CLARK, J. The appellant was convicted of murder in the second degree in the Western Criminal District Court. On appeal, his exceptions were overruled in the Superior Court, and thence he appealed to this Court.

Melvin Ray testified: "Elijah McCourry (the prisoner) stepped where Bob Ray (the deceased) and I were standing and said, 'What made you tear down the house over my children for?' Bob said, 'I never done it.' Elijah said, 'You or some of your folks did.' Bob said, 'Well, I didn't.' Bob stepped off, walking down the road some five or six steps and stopped with Charles Edwards, then Elijah threw a rock and I heard something strike. * * * Bob's left side was turned to Elijah, talking to Charles Edwards when the rock was thrown. I was in about two steps of prisoner when he threw the rock. I saw the rock in his hand and saw him throw it; it was a long rock, seven or eight inches long, and weighed a pound and a half or two pounds."

Will Edwards, testifying to same conversation between prisoner and deceased, says, that after the deceased went on and was talking to Charles Edwards, he turned and "heard a lick. Melvin Ray was two steps from Elijah at the time; don't know whether McCurry heard it; Melvin Ray talked as loud as I am talking. I asked Melvin Ray what that was, and he said, 'Elijah McCourry hit Bob Ray with a rock.' As quick as I turned I spoke. Bob Ray turned and slapped

his hand to the left side of his head and walked down the road."

Charles Edwards testified to same conversation between prisoner and deceased, and adds: "Bob walked down the road just a little below me. Bob was on the right hand and I was on the left hand, as you go down. Bob was three or four steps from me. Bob turned around and said, 'Take him away from here, or I'll hurt him.' Bob pulled something out of his pocket as he said that to me—looked like a rock. I heard something hit about that time. I thought it hit at Bob. Will Edwards said, 'What was that?' and Melvin said, 'Elijah McCourry threw a rock.' Couldn't tell which was nearest me; *Elijah was nearer to Melvin than I was.* When I heard the lick Bob threw his hand to his head and walked off down the road." After that he heard Elijah say he was "the man that hit Bob Ray," but that directly afterwards he denied that he had hit him. It was in evidence that the deceased was killed by that blow on the left side of his head, by whomsoever it was inflicted.

The exception principally relied on was the testimony of Will Edwards that as he "heard lick, Melvin Ray was two steps from Elijah McCourry at the time. I asked Melvin Ray 'what that was' (referring to the lick), and Melvin said (prisoner objecting, because witness said he did not know that prisoner heard it) 'Elijah McCourry hit Bob Ray with a rock.' "

The Court did not limit the effect of this testimony to a corroboration of Melvin Ray, but admitted it as part of the *res gestae.*

It is true the witness did not say that the prisoner heard Melvin Ray's statement that he had struck Rob Ray with a rock, but he says that prisoner was in two steps of Melvin when he made the statement. The declaration thus made in the presence of the prisoner charging him with the crime was

competent to go to the jury for what it was worth. The witness could not say, of course, that prisoner heard the charge against him made by Melvin Ray; he could only state the circumstances and leave to the jury to draw the inference that he heard it, and the effect to be given, if any, as a *quasi* admission of guilt from his failure to deny the charge if he did hear it. That he did hear it, is almost a necessary inference, if the testimony of the above witnesses is to be believed, which was, of course, a matter for the jury. Charles Edwards testifies he heard Melvin Ray say that prisoner threw the rock, and the evidence is that he was five or six steps from Melvin Ray at the time, and the prisoner was only two steps from him. The inquiry and reply were immediately upon the throwing of the rock. The lick was heard. "What was that?" is asked. Melvin, who says he saw prisoner throw the rock, and who was in two steps of prisoner, replies, "Elijah McCourry hit Bob Ray," and is heard by Charles Edwards, who was five or six steps from Melvin. If Elijah had not thrown the rock, it is reasonable to suppose he would have denied it. That, at least, was a reasonable inference, sufficient with the other circumstances, to make it competent evidence to be left to the jury in their search for the truth. There was conflicting evidence given by the prisoner and the witnesses for him, but that can not make incompetent the evidence that he was charged instantly with giving the mortal wound by one in two steps of him, who says also he saw the stone thrown, and that witnesses much further away heard the charge.

What was thus said, in immediate presence of the prisoner, at the instant the fatal blow was given and charging him with having given it, is a part of the *res gestae*, fully as much as the altercation and doings and remarks of others in his presence up to that time. It is a part of the *res gestae,* so much so that any declaration made by him at that time

negativing his giving the fatal blow, would even be competent for him, contrary to the general rule that while admissions and statements of a party are competent against him, his declarations in his own interest are not.

The fact that the prisoner was charged with the crime to his face, with the absence of any proof of denial of the charge, would have been competent, not only if made at the time, but at any date thereafter.      In this, it differs from the admissions of an agent, which are only competent against the principal, if made at the time of the transaction.      *Summerrow v. Baruch,* at this term.

"Evidence of the entire transaction is admissible, and of the surroundings.      It is competent to give evidence of what happened after or before the homicide if it is connected therewith."      1 McLain Crim. Law, sec. 411.      Declarations and exclamations made by by-standers have been held admissible as a part of the transaction.      *Ibid,* sec. 412, citing *Flanagan v. State,* 64 Ga., 52; *McRae v. State,* 71 Ga., 96; *State v. Duncan,* 116 Mo., 288; *State v. Kaiser,* 124 Mo., 651, and other cases.      For a stronger reason, the evidence here is competent, not only as a part of the circumstances at the time of the killing, but as a charge made against the prisoner by one standing close to the prisoner, who says he saw him throw the rock and heard it hit the deceased, and whose declaration immediately on hearing the blow that the prisoner threw the rock was heard by others three times as far off as the prisoner.

"The exclamations of persons who were present at a fracas in which a homicide occurred, showing the means and mode of killing, are admissible for or against the accused, because of their unpremeditated character and their connection with the event by which the attention of the speaker was engrossed."      Underhill      Crim. Ev. sec. 101, citing, among others, *Appleton v. State,* 61 Ark., 590; *State v. Biggerstaff,*

17 Mont., 510; *Walker v. State,* 78 Mo., 380. In the last-named case, the moment after the fatal shot was fired a by-stander exclaimed, "Don't strike him, for you have shot him now." This was held admissible as part of the *res gestae,* citing numerous cases from different States.

In *State v. Duncan,* 116 Mo., 288, a remark immediately after the homicide by a by-stander to an officer—"there is the man who did it"—was held competent as part of the *res gestae* on the trial of the person so designated for murder, citing 1 Bishop Cr. Prac., sec. 1085; 1 Wharton Ev., sec. 259, and precedents. In *State v. Kaiser,* 124 Mo., 651, the exclamation of an eye-witness of a murder was held admissible as part of the *res gestae.*

Melvin Ray, having testified on the stand, that he saw the prisoner throw at and hit the deceased, evidence of his statement at the time to that effect was further competent in corroboration.

The prisoner further excepts (1) because on objecting to a statement as to evidence, made by the Solicitor in his argument, the Court merely remarked that he did not remember any such evidence. The jury were judges of what the evidence was, and the Court could do no more; (2) that the Court charged that there was no evidence to support a verdict of excusable homicide in self-defence, and (3) refused to charge that in no view of the evidence can the jury find a verdict of guilty of murder in the first degree. There was no error in either respect. As the verdict was guilty of murder in the second degree, the last exception could not arise on this record, even if there had been ground to ask such charge.

The prisoner further excepted because (4) the Court told the jury, "If you find that Bob Ray only took a rock from his pocket, without attempting to throw it, or without prisoner seeing him draw it, that would not reduce the killing to

manslaughter; (5) because the prisoner asked the Court to charge, 'If the jury find that the prisoner killed the deceased with a deadly weapon, then the general rule is that malice is presumed from the use of a deadly weapon, and ordinarily nothing else appearing, you would return a verdict of murder in the second degree; but unless you find that the weapon had been prepared for the purpose, its use was not necessarily evidence of malice.' " The Court gave this instruction, but added that it would be sufficient to constitute murder in the second degree, but not express malice. The Court charged correctly as to murder in the first and second degrees, and manslaughter; arrayed the contention of the parties and applied the law, to all of which there was no exception other than above stated. We find nothing of which the prisoner can justly complain.

Affirmed.