## WILLIAM BAYSINGER v. THE TERRITORY OF OKLAHOMA.

(Filed September 5, 1905.)

1. INDICTMENT — Murder — Allegations. An indictment which charges the crime of murder and contains also an averment that the defendant "did make and commit an assault upon" the deceased, does not charge more than one offense. Where the indict- ment contains a charge of murder, the defendant cannot be con- victed of an assault or any crime of less degree than one of the degrees of homicide

2. SAME. Form for indictment charging murder, set out and ap- proved.

3. EVIDENCE—What Proper on Murder Trial. On a trial of one charg- ed with homicide, where there is conflicting evidence as to whether the deceased had an open pocket knife in his hand at the time the fatal shot was fired, it is not error to permit the prosecution to show that within a short time after the deceased was shot and be- fore death, that a closed pocket knife was found in his pocket on his person. Such circumstance is a proper one for the consideration of the jury.

4. SAME—Res Gestae. Where a declaration or statement is made by a bystander during the progress of an altercation which results in one of the parties shooting and killing the other, and which re- mark gives character to an act of the accused which act is a pro- per subject of proof on the trial, such statement may be introduced in evidence as part of the res gestae.

5. CRIMES—Murder and Manslaughter—Sentence. Where one charg- ed with murder is convicted of manslaughter in the first degree, the court is authorized by the provisions of section 2676, Wilson's Statutes, 1903, to sentence such person to imprisonment in the pen- itentiary for life, or for any number of years not less than four.

(Syllabus by the Court.)

*Error from the District Court of Greer County; before James K. Beauchamp, Trial Judge.*

*Garrett & Garrett* and *J. L. Carpenter,* for plaintiffs in error.

*P. C. Simons, Attorney General,* and *Don C. Smith, Ass't.* for defendant in error.

Opinion of the court by

BURFORD, C. J. :  The plaintiff in error, William Baysinger was convicted in the district court of Greer county of the crime of manslaughter in the first degree and sentenced to confinement in the penitentiary for a term of twenty-five years.

It is argued by counsel for plaintiff in error that the court erred in overruling the  demurrer to the  indictment. The demurrer is upon the grounds that more than one of-fense is charged in the indictment.   It is contended that the indictment contains a charge of an assault and also an in-dependent charge of murder.   There is no merit in the con-tention. ·  The indictment contains considerable surplus and redundant matter, as well as useless repetition but it contains but one good charge.   The charging part of the indictment is as follows :

"That William Baysinger, late of the county aforesaid, on the twenty-seventh day of June, in the year of our Lord nineteen hundred and three, in the county of Greer and Ter-ritory of Oklahoma aforesaid, did then and there, without au-thority of law, wilfully, purposely, feloniously, with malice aforethought, and with a premeditated design to effect the death of Charlie Williams, in and upon the said Charlie Will-iams make and commit an assault, and the said William Bay-singer did then and there, without authority of law, wilfully purposely, feloniously, with malice aforethought, and with a premeditated design  to effect the death of the  said Charlie Williams, with a pistol, then and there loaded with powder and leaden balls which the said William Baysinger then and there had and held in one of his hands, shoot the said Charlie Williams and thereby discharge one of said leaden balls from said pistol at, toward and into the body of the said Charlie Williams, the said leaden ball then and there entering the

left breast of the said Charlie Williams at a point just below the left nipple of the said Charlie Williams, and thereby give to and inflict upon the said Charlie Williams, by means of said pistol and the said leaden ball discharged therefrom, as aforesaid, one mortal wound, of which said mortal wound so made and inflicted upon him, he, the said Charlie Williams, on the next succeeding day thereafter at about four o'clock in the morning, in said county and territory, died; and the said William Baysinger did, then and there, without authority of law, wilfully, purposely, feloniously, with malice aforethought and with premeditated design to effect the death of the said Charlie Williams, deliberately and premeditatedly, in the manner and by the means aforesaid, kill and murder the said Charlie Williams, and so the jurors aforesaid, upon their oaths aforesaid, do say that the said William Baysinger, in manner and form aforesaid, without authority of law, wilfully, purposely, feloniously, with malice aforethought and with a premeditated design to effect the    death of the said Charlie Williams, did kill    and murder the    said Charlie Williams."

If the pleader had been charged with prolixity or verbosity, he would be adjudged guilty upon the face of the record, but the charge is not open to the objection of duplicity. In order to be subject to this objection, the indictment must charge two distinct and complete crimes, for each of which a separate punishment may be inflicted, and    each of    which would withstand a demurrer for want of sufficient facts to constitute a crime.    With all its verbiage the indictment contains a sufficient charge of murder, but it does not contain a good charge of assault, independent of the charge of murder. It is not sufficient to say that the accused "did commit an assault" the charge would be subject to demurrer.    An assault is defined to be "any wilful and unlawful attempt or of-

fer with force or violence, to do a corporal hurt to another."
In order to charge this offense the averments must show that
some force or violence was attempted or offered by the accused, and that it was with the purpose to do a corporal hurt
or injury to another.   The demurrer could not have been sustained had the contention of plaintiff in error been correct.
Every charge of homicide necessarily includes an assault and
battery, and when death has resulted the perpetrator can only
be convicted of some degree of homicide; no conviction can
be had for assault or assault and battery.   This indictment
charges that the accused shot and killed the deceased, and
couples this with averments which make the homicide murder or manslaughter in some degree, and under such a charge
the Territory cannot convict the accused of assault or assault
and battery, and if the indictment contains such a charge it
will be treated as surplusage or only constituting necessary
elements in the higher crime charged.   The demurrer was
properly overruled.   The indictment is objected to upon other
grounds, but we do not think the objections of sufficient importance to merit notice.

In this connection we think it would not be unprofitable
to submit some suggestions upon the subject generally of
indictments in this class of cases.   In the remote past, as
well as in some later instances, the tendency seems to have
been favorable to encumbering a charge of murder with a
mass of technical, unnecessary and verbose repetitions.   In
some of these obsolete forms of indictment, none but a skilled
lawyer or jurist, or a profound scholar can discover the meaning of the strange phraseology, transposed sentences, and disconnected averments.   Recognizing the practical demands of

common sense and ordinary intelligence, the framers of our code of criminal procedure sought to abolish this style of pleading in criminal causes, and to adopt methods more in harmony with modern requirements. Hence it is provided, sec. 5357, Wilson's Stat. 1903:

"The indictment must contain: First, the title of the action, specifying the name of the court to which the indictment is presented and the names of the parties; second, a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

"Sec. 5358. The indictment must be direct and certain as regards: First, the party charged; second, the offense charged; third, the particular circumstances of the offense charged when they are necessary to constitute a complete offense."

"Sec. 5365. The indictment is sufficient if it can be understood therefrom: First, that it is entitled in a court having authority to receive it, though the name of the court be not stated; second, that it was found by a grand jury of the county or subdivision in which the court was held; third, that the defendant is named, or if his name cannot be discovered, that he is described by a fictitious name, with the statement that his true name is to the jury unknown; fourth, that the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county or subdivision, is triable therein; fifth, that the offense was committed at some time prior to the time of the finding of the indictment; sixth, that the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what was intended; seventh, that the act or omission charged as the offense is stated with such

a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case."

The application of these plain rules prescribed for criminal pleading will simplify matters and make plainer the duties of counsel, court and juries.

The crime charged in the indictment under consideration is defined as follows: "Homicide is murder when perpetrated without authority of law, and with a premeditated design to effect the death of the person killed." And this includes each lower degree of homicide.

An application of these simple rules of pleading, combined with the elements constituting the crime of murder to the facts relied upon in the case at bar, would result in an indictment in about the following form, which would meet every requirement of law and lead to no uncertainty:

The Territory of Oklahoma, County of Greer, ss. In the District Court.

*The Territory of Oklahoma v. William Baysinger.*

INDICTMENT FOR MURDER.

We, the grand jurors of the grand jury, duly and legally impaneled, sworn and charged, in the district court in and for the county of Greer and Territory of Oklahoma, at the August term, 1905, do upon our oaths find and present: That at and in the county of Greer and Territory of Oklahoma, on the twenty-seventh day of June, 1903, one William Baysinger did then and there feloniously, without authority of law and with a premeditated design to effect the death of one Charlie Williams, shoot and discharge a leaden bullet into the body of him the said Charlie Williams, from a certain loaded pistol which he the said William Baysinger then and there had and held in his hand; then and there and thereby

inflicting upon the body of him the said Charlie Williams, one mortal wound, of which he then and there on the twenty-eighth day of June, 1903, did die.

And so the grand jurors aforesaid, upon their oaths aforesaid, do say and find that the said William Baysinger, in manner and form aforesaid, did kill and murder the said Charlie Williams, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the Territory of Oklahoma.

CHAS. M. THACKER.

County Attorney.

We believe the foregoing form contains every material averment required by the rules of pleading, and states the offense charged with such degree of certainty as to inform the defendant of what he will be required to meet, and this. is all that the law exacts.

The next alleged error is that the court permitted the prosecution to show that the deceased had a closed knife in his pocket about an hour after the fatal shooting. The deceased was shot by the defendant and lived several hours; he was carried by some of his fellow workmen to a house near by and there a closed pocket knife and some tobacco was found in his pocket. We think there was no error in admitting this evidence. There was evidence to the effect that the deceased had a knife and some tobacco, filling his pipe, immediately prior to the firing of the fatal shot; some witnesses testified that he had the knife in his hand at the time he was shot. The defendant claimed he acted in self defense. This knife was a material subject of inquiry. It was found on the deceased shortly after he was wounded; his fellow workmen had been in charge of him and administer-

ing to his wants from the time he fell in the presence of the defendant, and there was no evidence that there was any other knife in his possession or connected with the tragedy. As to whether it was the same knife seen in the possession of the deceased just prior to the shooting and as to how it got into his pocket closed, and whether he had it in his hands when he was shot, were all proper matters for the consideration of the jury. The fact that the only knife testified about was found in the pocket of the deceased a very short time after the shooting was a circumstance to which the jury were entitled in view of the conflict in the testimony as to whether or not the deceased had put the knife in his pocket before he was shot.

The next objection is that the court erred in permitting the witness Hare to testify as to a statement he heard a by-stander, Goens, make to Williams just before he was shot. It appears that Williams and Baysinger were both working with a threshing outfit; the parties had a camp or cooking wagon and took their meals from shelves or boards along-side the cook wagon. The difficulty which resulted in the shooting arose during the breakfast time; several persons were in the immediate vicinity, some eating, others engaged in other pursuits. Williams and Baysinger had been en-gagd in a quarrel and scuffle ten or fifteen minutes before and had been separated by friends. Baysinger was on one side of the wagon and Williams on the other; some of the other persons present were noticing them while others were paying no attention to them. It appears that Williams had dropped his knife and pipe during the first difficulty and after they were separated, Williams went to looking for his knife and pipe, and after finding them was standing quietly refilling

his pipe with tobacco. Baysinger was seen coming around the wagon with the pistol in his hands. Goens said to Williams, "Keep your eyes open, that man is going to hurt you." Hare, a witness, heard this remark and in detailing the events which led up to the shooting and of the tragedy itself, testified to what Goens said. The defendant objected to this on the trial, but the court overruled the objection and permitted it to go to the jury. The contention of counsel for the prisoner is that this was a remark made by a bystander, not in the hearing of the prisoner, and not a part of the *res gestae.* We are not able to concur in this objection upon either ground. To determine what is part of the *res gestae* is not always without difficulty. It is said in Am. & Eng. Enc. of Law, vol. 24, p. 662, that the general rule is "that whenever it becomes important to show upon the trial of a cause a particular fact or event, it is competent and proper also to show any accompanying facts and circumstances which are actually or substantially contemporaneous with it and calculated to elucidate and explain its quality and character, and so connected with it as to constitute one transaction, the rule including accompanying declarations as well as acts, although such declarations would, apart from this doctrine, be excluded as hearsay."

In Elliott on Evidence, sec. 550, the law is stated as follows:

"Declarations of bystanders may be so connected with a transaction as to characterize and be a part of it. When this is the case, they are admitted on the same theory as if they had been made by one of the actors."

Mr. Justice McClain in his work on Criminal Law, vol. 1, sec. 412, says:

"Declarations and exclamations of bystanders are admissible as part of the transaction."

We think the statement of Goens may fairly be denominated a part of the *res gestae*. The witness Hare was eating his breakfast; Williams was in view and near the wagon, filling and lighting his pipe; Baysinger came around the wagon and said to Williams, "I want you to tell me what I have done to you or what I have said that caused you to cut me with a knife." Williams said: "Go on, I have got no talk for you, got nothing to do with you." Baysinger then passed on around the wagon. In a very short time Goens walked around near Williams and said "You had better keep your eyes open, that man is going to hurt you." Baysinger was then on the opposite side of the wagon, but he immediately came around the wagon with his pistol in his hands, threw it down on Williams and said, "You God damned son of a bitch, why did you cut me with that knife?" Williams started toward him and the fatal shot was fired. The declaration of Goens was made between the first inquiry made by Baysinger of Williams as to why he had cut him, and the second inquiry when he shot him; only a few moments had elapsed. During this time Baysinger had gone on the opposite side of the wagon and had produced his pistol and had come on around in a threatening position. Goens had evidently observed his hostile actions and his remark to Williams was a part of, and a continuance of the transaction, and gave character to the movements of Baysinger. He had evidently not cooled off from the previous altercation ten or fifteen minutes before when, as he claimed, Williams had cut him with the knife; he was still smarting for revenge; Goens observed his attitude or preparations and only gave

voice to Baysinger's actions. While we think that under all the circumstances this remark of Goens may fairly be said to be part of the *res gestae,* we think it was admissible as a declaration made in the presence of Baysinger. It is argued by counsel for Baysinger that it was not in his presence and not heard by him. The only evidence on the question is that he was on the opposite side of the wagon at the time, but they were only a few feet apart, and the fair and reasonable inference is that he did hear it, and it is fair to presume that it was the judgment of the trial court that he did hear it.

The next complaint is that the court erred in assessing an unusual and excessive punishment and one not authorized by law. The accused was charged with the crime of murder, and was convicted of manslaughter in the first degree, a verdict which we think was eminently correct under all the facts of this case, and one abundantly' sustained by the evidence. The punishment for this degree of manslaughter is imprisonment in the territorial penitentiary for not less than four years. Counsel argue that inasmuch as the punishment for murder is or may be imprisonment for life, that the jury found by their verdict that such punishment would be too severe, and fixed the crime at a lower degree. We are loth to believe that the jury were controlled in this matter by a consideration of the punishment to be inflicted, and cannot accept any such imputation. The jury found the defendant guilty of manslaughter in the first degree because the facts proven left a reasonable doubt as to the whether the shooting was done with a premeditated design to take life; and evidently acting upon the belief that the killing was unjustifiable, but felonious, fixed the degree of crime as

stated in their verdict.   Counsel say "the court invaded the province of the jury when he assessed a punishment which, under ordinary calculation, is equal to a life sentence." The provisions of our criminal code upon this subject have evidently escaped the observation of counsel.

It is provided in section 2676, Wilson's Stat., 1903, that:

"Whenever any person is declared punishable for a crime by imprisonment in the territorial prison for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the court authorized to pronounce judgment upon such conviction may in its discretion sentence such offender to imprisonment during his natural life or for any number of years not less than such as are prescribed."

This statute was not called to the attention of the court when the case of *Jones v. The Territory,* 4 Okla., 45, was decided, and the writer of the opinion either overlooked or had not discovered it, and  it was not cited  in that case. Jones was not sentenced for life, but the same argument was there made as in·this case, that the court had no power to assess a punishment which would, according to the ordinary expectancy of life, equal a life punishment. In that case the court reached the right conclusion without reference to this statute.   The punishment prescribed for manslaughter in the first degree comes squarely within the terms of the section quoted *supra.*   The imprisonment must be for a term not less than a specified number of years, and no limit to the duration of such imprisonment is declared, hence the court is, in its discretion, authorized to sentence such offender to imprisonment for life or for any number of years not less than four.   The court fixed the term of imprisonment at twenty-five years, which was clearly within the statutory authority

and discretion of the court. We find no prejudicial error in the record.

The jury and prosecuting officers are to be congratulated and commended upon the conviction in this cause. If convictions in similar cases were more frequent and punishment more sure, human life would be held more sacred and homicides less frequent. The tendencies of juries to acquit every man charged with murder who falsely swears to a fictitious case of self defense, has made it practically impossible for the courts to secure the punishment of this class of criminals. A few more convictions and the infliction of appropriate punishment in this class of homicides, will inspire the hope that a brighter day is dawning and that the "gun toter" who regards life so cheaply that his fellow man dare not reach for his pocket handkerchief with which to wipe the perspiration from his brow, or produce the traditional pipe of peace, or attempt to obtain his social "plug of Battle Ax" or chew of "Mountain Dew Fine Cut," without having his peaceful conduct attributed to hostile motives, and his life taken in so-called self defense, has reached the period when the certainty of conviction and the fear of adequate punishment will insure a higher appreciation of the sacredness of human life, and a greater regard for the enforcement of the law.

The judgment of the district court is affirmed at the costs of the plaintiff in error, and the sheriff of Greer county is directed to proceed immediately to execute said judgment.

Beauchamp, J., who presided in the court below, not sitting; all the other Justices concurring.