EDGAR S. CLOUD, GEORGE HARDY, JAMES PERILLO and MICHAEL WILLIAMS, Appellants, v. THE STATE OF DELAWARE, Appellee.

(*October* 13, 1959.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*John Merwin Bader* for appellants, defendants below.

*Charles L. Paruszewski*, Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 35, 1959.

BRAMHALL, J.:

This appeal relates (1) to the sufficiency of the evidence to sustain a conviction; (2) to alleged attempts by police officers to circumvent the rules of evidence by injecting opinions, conclusions and innuendo into their testimony; (3) to the admissibility of statement of a by-stander; and (4) to error on the part of the trial judge in his charge to the jury in allegedly commenting upon the facts.

Defendants were tried in the Municipal Court of the City of Wilmington for being concerned in interest in lottery policy writing. 11 *Del. C.* § 662. Upon their conviction they appealed to the Superior Court of New Castle County, where the case was tried *de novo* before a jury. A motion for acquittal at the close of the State's case being denied, defendants elected to stand on the motion and put in no defense. All were found guilty and have appealed to this court.

The pertinent facts are as follows:

On December 16, 1958, after watching the premises at 325 East 4th Street, in Wilmington, for approximately twenty minutes, during which time they observed some sixty persons entering the premises and a large number leave, members of the Vice Squad of the Wilmington Bureau of Police approached the premises. The defendant Cloud, who was standing outside, upon seeing the officers, tapped on a window and almost immediately thereafter eleven men rushed out and disappeared.

The premises consisted of a small groundfloor confectionery store upon which was a neon sign with the words "Pete's Soda Shop." The mercantile license found inside contained the same

designation. The shop contained a counter, an ice-cream box, and a soda fountain. The two latter were not in operation because of the working parts being out of order. There were no soda fountain syrups, accessories, etc., usually found in a soda shop and the equipment showed long non-use. There was a small amount of merchandise in the store, of a value of approximately from forty to fifty dollars, which was dusty and by its condition showed that it had been on the shelves for a considerable length of time.

Defendant Williams was observed standing at one end of an "L"-shaped counter. Defendant Perillo was at the other end with his hands extended over the counter to the customers' side. Directly underneath his outstretched hands was a piece of paper which, upon examination, was found to be a writer's number slip, containing numbers, amounts played and initials. Another defendant was down in the basement with the doors barricaded and refused to come up until the officers were in process of using force to break the cellar door. The police were advised by one of the defendants, when they asked who was in the cellar, that it was the same man who usually stayed there. Upon entering the cellar, they found in the toilet charred pieces of paper which were wet and could not therefore be analyzed. Near where the defendant Williams was standing was a six by six inch hole in the floor encased in a square plywood funnel extending down into the cellar approximately 12 to 14 inches. The contents of the cellar consisted entirely of junk. While the police were on the premises, two unidentified colored men went to one of the police officers—who was not in uniform—and stated that he desired to place numbers with him. At this point defendant Williams told them to get the hell away from there, that this store is closed.

1. Defendants contend that since no one saw any of them taking part in a lottery policy transaction or otherwise committing an overt act in furtherance of a lottery policy scheme and since there were no admissions on the part of any

of the defendants, the proof in this case is limited entirely to circumstantial evidence as such is applied in criminal cases. They aver that the evidence falls far short of the weight and compelling force necessary to have a sufficiency of circumstantial evidence upon which to base a conviction.

We think that this evidence is sufficient to sustain a conviction. In the first place, while the sign and mercantile license both indicated that the place was a store, the evidence offered by the State—which we must assume was accepted by the jury—is clearly inconsistent with its legitimate use as a store. The testimony relating to the look-out, the barricaded doors and the refusal to let the police in, the man in the cellar, all indicate that the place was being used for some illegal purpose. The evidence as to the numbers slip used by policy writers, the hole in the floor leading into the barricaded cellar, the slips of paper found in the toilet and the two colored men who came up and stated that they wished to place numbers with the police officer show clearly that this illegal purpose was being engaged in and being concerned in lottery policy writing. Unquestionably, all of these circumstances taken together are sufficient, if believed, to sustain a conviction. See *Holland v. State,* 9 *Terry* 559, 107 *A.* 2d 920; 9 *Wigmore on Evidence,* § 2494.

2. Defendant contends that the police witnesses deliberately endeavored to circumvent the rules of evidence by injecting opinions, conclusions and innuendos into their testimonies. They rely on the case of *Curran v. State of Delaware, D. C.,* 154 *F. Supp.* 27, *affirmed* 3 *Cir.,* 259 *F.* 2d 707. As illustrations of their contentions, they cite (1) the failure of a police officer to enumerate even half of the items of merchandise; (2) a statement by a police officer that he had known one of the defendants since he had been on the Vice Squad, just about two years; (3) the testimony of another officer, when asked why he inquired as to who was down in the cellar said "because of past experience and the reputation of this store."

The first objection is hardly worthy of comment. The officer took no inventory. Being a police officer and not a storekeeper, he may be presumed to have had only a superficial knowledge of the articles usually carried by a store.

The second objection is also without merit. The inference which defendant claims was intended to show a previous bad reputation on the part of defendant is reached only by reading into this statement something which is not there. The officer was endeavoring to fix by association with something concerning which he had a more definite knowledge the length of time he had known this defendant. Many persons frequently have to engage in such mental gymnastics in order to determine more specifically the length of time which has occurred since a certain event.

As to the question of the man in the cellar, defendants objected to the question, and the Deputy Attorney General informed the court that he was not pressing it. There was no motion to strike. Presumably defendants were satisfied with the decision of the Deputy Attorney General not to press the question.

■ 3. Defendants objected to the trial judge permitting testimony by a police officer to the effect that while he was on the premises, in the presence of the defendant Hardy, two unknown colored men came to the store and wanted to place numbers with him. Defendants objected to this testimony on the ground that it was pure hearsay.

We think that this was admissible as a spontaneous remark made at the time of the arrest and constituted an exception to the hearsay rule. In the case of *Curran v. State*, 10 *Terry* 587, 122 *A.* 2d 126, 127, there was a telephone call to the police by a woman, who stated: "Please send the police quick, there is a girl screaming down in the Park on Ferris Street and I think she is being raped." This court in a footnote said: "This statement was not before the jury; but it appears to us to be admis-

sible as a part of a spontaneous exclamation." 6 *Wigmore, Evidence,* § 1750. The statement here came at a time when the arrests were being made and in the presence of one of the defendants, who told him to get the hell away from there, that this store is closed. It was given without reflection, at a time closely connected with the arrest; it was natural and spontaneous. We think that the statement was admissible as a part of the *res gestae. Di Prisco v. Wilmington City Railway Company,* 4 *Penn.* 527, 57 *A.* 906. This rule is also applicable in the case of a statement by a bystander. *State v. McCourry,* 128 *N. C.* 594, 38 *S. E.* 883; *Baysinger v. Territory,* 15 *Okl.* 386, 82 *P.* 728; *Stroud v. Commonwealth,* 19 *S. W.* 976, 14 *Ky. Law Rep.* 179; *State v. Williams,* 96 *Minn.* 351, 105 *N. W.* 265.

 4. Defendants complain of the charge of the trial judge in commenting on the purpose of the statute and the nature of the offense. The portion of the charge complained of is as follows:

"* * * The purpose of the law is to discourage the promotion and prevent the operation of lotteries and other similar schemes. It is a business that is carried on secretly and under cover. All subterfuges possible are resorted to, to avoid the detection and conviction of those engaged in it. The statute is framed to prevent the existence of lotteries, because while a winning combination may win several hundred times the amount of the deposit, yet the possible combinations exceed one thousand, so that the odds against winning are greater than 1,000 to 1.

"Regardless of the beneficial purposes of the Act, however, you are to consider this case only upon the evidence before you. You cannot convict the defendants of the offense charged against them unless you are satisfied of their guilt from the evidence beyond a reasonable doubt."

Prior to the portion of the charge complained of by defendants, the trial judge read to the jury the statute which defendants were accused of violating. Immediately after the portion

of the charge complained of, the trial judge instructed the jury that they were to consider the case solely upon the evidence before them.

We do not see how defendants were injured by this charge. No one will dispute the fact that the purpose of this law was to discourage and prevent the operation of lotteries and other similar schemes. It is a matter of common knowledge that in gambling devices of this kind, the odds against the individual player are extremely great. It is quite evident that in the use of this language the trial judge was merely endeavoring to give to the jury a better understanding of the purpose of the Act. There was no violation of Article 4, Section 19, of the Constitution of this state, *Del. C. Ann.*, prohibiting trial judges from charging juries with respect to matters of fact but permitting them to state the questions of fact in issue and declare the law with reference thereto. A charge must be considered as a whole, not by taking certain sentences out of context. Here, after the trial judge's statement, he cautioned the jury that regardless of the beneficial purposes of the Act, they must consider the case only upon the evidence before them. We find no error in this portion of the charge.

5. Appellants complain of the language of the trial judge relating to circumstantial evidence. The portion of the charge objected to is as follows:

"In criminal cases, the necessity of admitting it (*i.e.*, circumstantial evidence)* is more manifest than in civil cases. * * * The possibility of proving an offense charged by direct or positive evidence is often difficult. * * * It [circumstantial evidence]* is adopted more readily in proportion to the difficulty of proving the fact by direct evidence."

Appellants contend that this language also constituted a violation of Article 4, Section 19, of the constitution of this state.

*Matter in brackets supplied.

They also state that it is at least questionable as to whether or not the language used by the trial judge was erroneous as a declaration of law.

If we understand defendants correctly, they interpret the language of the trial judge as meaning that the necessity of admitting circumstantial evidence is more manifest in criminal cases than civil cases. We do not so interpret it. As we understand the statement of the trial judge, he was, in effect, saying that as direct evidence becomes less available, the use of circumstantial evidence is necessarily more resorted to for proof of the factual issues involved. It has no bearing at all on the truth or falsity of circumstantial evidence or the weight which a jury should give to it. Here again, the language of the trial judge immediately following the language objected to, in which he gave in full the usual charge on circumstantial evidence, cured, we think, any misunderstanding which the jury might have had from the prior language.

The judgment of the Superior Court is affirmed.

