STATE OF NORTH CAROLINA v. JOHN BLEASE STEVENS.

(Filed 18 June, 1965.)

**1. Searches and Seizures § 1;   Criminal Law § 79—**

Where officers, investigating an assault with a gun, go to a suspect's house and enter and find him in his bedroom and also find in the house loaded buckshot shells and a shotgun, *held,* the conditions were such as to require a search warrant, and it was error to admit in evidence over defendant's objection the shells and shotgun, and the statute also renders incompetent testimony of an expert that, from his examination of the gun, empty shells found near the scene of the crime were fired from the gun. G.S. 15-27.1.

**2. Criminal Law § 169—**

The admission of incompetent evidence does not entitle defendant to judgment of compulsory nonsuit, since upon the subsequent trial the State may be able to offer sufficient competent evidence to carry the case to the jury.

APPEAL by defendant from *Crissman, J.,* 30 November 1964 Mixed Session of STANLY.

Criminal prosecution on an indictment charging that defendant on 2 August 1964 in a secret manner did maliciously and feloniously commit an assault and battery with a deadly weapon, to wit, a shotgun, upon Annette Cagle, Jeffrey Stevens, Clara Stevens, and Lonnie Smith by waylaying and otherwise, with intent to kill Annette Cagle, Jeffrey Stevens, Clara Stevens, and Lonnie Smith. G.S. 14-31.

Plea: Not guilty. The State alone offered evidence.

From a judgment of imprisonment, defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General Richard T. Sanders for the State.*

*Blackwell M. Brogden for defendant appellant.*

PARKER, J. The State's evidence shows these facts: Clara Stevens and defendant, her husband, separated on 27 July 1964. Three children were born of their marriage — Jo Anne, age 8 years; Johnny, age 5 years; and Jeffrey, age 3 years. Clara Stevens had a daughter, Annette

Cagle, age 18 years, born of a prior marriage. On 2 August 1964 Clara Stevens and her three children born of her marriage with defendant were living with her father, Lonnie Smith, in a five-room frame house at 837 Mill Street in the town of Albemarle.

About 1:30 a.m. on 2 August 1964, Clara Stevens was asleep in a bed in a bedroom in her father's house. This bedroom has one glass window in wood fronting toward Love Street, and her bed was about 12 feet from the window. In bed with her was her son Johnny, who was asleep. In the same room, Annette Cagle and Jeffrey Stevens were in a bed situate on the left side of the window, on the other side of the room from the bed in which Clara Stevens and Johnny were. Annette was awake. Next to this room was a bathroom with one window fronting toward Love Street, and next to this was a little room with two windows fronting toward Love Street, in which Lonnie Smith was asleep in a bed. Jo Anne and her maternal grandmother were in another part of the house.

Clara Stevens testified: "On the night of August 2, 1964, I woke up and heard shots and glass a-breaking and — this was around 1:30 o'clock a.m. I heard five (5) real loud shots, one firing right after another. The glass was breaking from my bedroom window that was facing Love Street. * * * The glass fell in the room. * * * The shot [*sic*] came through the bed and into the doors and then on into the wall behind the door. I don't know how many came in, but they were buckshot and they spread." Clara got out of bed and called the police. Neither Clara nor her son Johnny was hit by a shot.

Annette Cagle testified to this effect: She was lying in bed with Jeffrey sleeping by her side. She heard four shots, real loud, one right after the other. The shots broke the glass in the window and glass was all over the room. She felt glass hit her leg, which "brought blood to the surface." Jeffrey waked, and jumped out of bed. She jumped out of bed, and they lay on the other side of the bed until the police came.

Lonnie Smith testified: "* * * I heard shots at one o'clock a.m. or about 1:30 o'clock a.m. I heard five shots. The next day I observed eight or nine bullet holes in my room."

A few minutes after the shooting a police officer of the town of Albemarle arrived at Lonnie Smith's house. About 2 a.m. on 2 August 1964 three police officers of the town of Albemarle went to the home of defendant, which is situate about 300 or 400 feet from the home of Lonnie Smith. They had no warrant for his arrest, and no search warrant for his premises. The screen door was closed, the inside door was open, and the house was dark. They knocked two or three times and received no answer. Two of them opened the screen door and walked into the house hollering for defendant. One officer went in a side door.

In a little bedroom next to the kitchen they found defendant, wearing Bermuda shorts and a shirt, lying on a˙ bed. They turned him over on his side and shook him. He turned on his back, and asked what they were doing there. They said they thought he might have had something to do with the shooting at the Smith house. He denied doing any shooting there. Over defendant's objections and exceptions, the officers were permitted to testify that they found on a dresser in his bedroom eight loaded double ought buckshot shells, 12 gauge, and standing up behind the kitchen door, about five or six feet from where defendant was found in bed, an unloaded 12 gauge Remington automatic shotgun. Over defendant's objections and exceptions, the State was permitted to offer these shells and this shotgun in evidence; the shotgun was marked State's Exhibit 10, and the empty shells were marked State's Exhibit 11. Over defendant's objections and exceptions, the officers were permitted to testify that in the bedroom were defendant's shoes which had wet grass and dirt on them. The officers arrested defendant in his home without a warrant, and carried him to jail.

Later, a police officer of the town of Albemarle found across Love Street on a bank in Mr. Freeman's yard, which is about 45 feet from the window of the bedroom where Clara Stevens and three other persons were that night, four empty double ought buckshot shells, 12 gauge. He found another similar shell off this bank in a ditch.

Over defendant's objections and exceptions, John Boyd, a special agent with the State Bureau of Investigation assigned to and in charge of the firearms and ballistics section of its crime laboratory, and whom the court found as a fact was an expert in ballistics, was permitted to testify to the following effect: Frank Blalock, a police officer of the town of Albemarle, delivered to him in his office in Raleigh on 3 August 1964 a 12 gauge Remington automatic shotgun, which is State's Exhibit 10, and five fired double ought buckshot shells, 12 gauge, which are State's Exhibit 11. He ran a ballistic test on this automatic shotgun to determine whether or not it was the weapon that fired the five empty double ought buckshot shells, 12 gauge, delivered to him by Blalock, and that in his opinion all five of these shells were fired by this shotgun. Officer Blalock delivered to him eight double ought buckshot shells, 12 gauge, which had not been fired. He fired six of these shells for examination purposes.

Defendant assigns as errors the admission in evidence over his objections and exceptions of the 12 gauge Remington automatic shotgun and of the eight 12 gauge loaded double ought shotgun shells found in his home by the officers and of their testimony in respect to these articles and in respect to his shoes found in his house. The assignment of errors is good.

The General Assembly by Chapter 644, 1951 Session Laws, amended G.S. 15-27 by adding a proviso in express and explicit words reading as follows: "Provided, no facts discovered or evidence obtained without a legal search warrant in the course of any search, made under conditions requiring the issuance of a search warrant, shall be competent as evidence in the trial of any action." It would seem that this amendment to G.S. 15-27 by the General Assembly was enacted by reason of the decision by a divided Court in *S. v. McGee,* 214 N.C. 184, 198 S.E. 616 (28 September 1938). 29 N. C. Law Review 396 (1951); 32 N. C. Law Review 114 *et seq.* (1953).

The General Assembly, Chapter 496, 1957 Session Laws, amended Article 4, Chapter 15 of the General Statutes by adding a new section immediately following § 15-27, to be numbered § 15-27.1, and reading as follows:

"The provision of this article shall apply to search warrants issued for any purpose including those issued pursuant to the provisions of G.S. 18-13. No facts discovered or evidence obtained by reason of the issuance of an illegal search warrant or without a legal search warrant in the course of any search, made under conditions requiring a search warrant, shall be competent as evidence in the trial of any action."

In *S. v. Coffey,* 255 N.C. 293, 121 S.E. 2d 736, the Court, after quoting the second sentence of G.S. 15-27.1, said:

"To render evidence incompetent under the foregoing section, it must have been obtained (1) 'in the course of . . . search,' (2) 'under conditions requiring a search warrant,' and (3) without a legal search warrant. The purpose of this and similar enactments (G.S. 15-27) was 'to change the law of evidence in North Carolina, and not the substantive law as to what constitutes legal or illegal search.' Therefore a search that was legal without a warrant before these enactments is still legal, and evidence so obtained still competent. 30 N. C. Law Review 421. It will be noted that the statutes use the phrase 'under conditions requiring a search warrant.' No search warrant is required where the officer 'sees or has absolute personal knowledge' that there is intoxicating liquor in an automobile. *State v. Giles,* 254 N.C. 499, 119 S.E. 2d 394; *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133. No search warrant is required where the owner or person in charge consents to the search. *State v. McPeak,* 243 N.C. 243, 90 S.E. 2d 501."

There is no evidence that defendant consented to or invited a search of his home. There is no evidence that the search was incident to a law-

ful arrest. The search of defendant's home by the three officers, upon the facts in the instant case, without a search warrant was "made under conditions requiring a search warrant," and consequently the facts discovered and the evidence obtained were rendered incompetent by statute and improperly admitted in evidence. *S. v. McMilliam,* 243 N.C. 771, 92 S.E. 2d 202; *In re Walters,* 229 N.C. 111, 47 S.E. 2d 709; *Agnello v. United States,* 269 U.S. 20, 70 L. Ed. 145; Wharton's Criminal Law and Procedure, Anderson Ed. (1957), Vol. IV, § 1535; 79 C.J.S., Searches and Seizures, § 66(d); 47 Am. Jur., Searches and Seizures, § 16.

Defendant assigns as error the admission in evidence over his objections and exceptions of the testimony of John Boyd to the effect that he ran a ballistic test on the 12 gauge Remington automatic shotgun, which is State's Exhibit 10, to determine whether or not it was the weapon that fired the five empty double ought buckshot shells, 12 gauge, which are State's Exhibit 11, and that in his opinion all five of these shells were fired by this shotgun. This assignment of error is good, for the reason that this testimony of John Boyd was in respect to the shotgun and empty shells which were rendered incompetent by statute and improperly admitted in evidence. To hold his testimony competent under the facts here would be to nullify the express and explicit provisions of G.S. 15-27.1.

The record does not contain the verdict of the jury. Neither does the court's minutes. However, it seems plain the jury rendered a verdict of guilty for two reasons: (1) Defendant so states in his brief; and (2) the court's judgment of imprisonment. The omission of the jury's verdict in the court's minutes and in the record shows the necessity for the trial judge's reading the minutes before he signs them.

Defendant is not entitled to a judgment of compulsory nonsuit. At the next trial the State may be able to offer sufficient competent evidence to carry the case to the jury. *S. v. Hall, ante,* 559, 142 S.E. 2d 177; *S. v. McMilliam, supra.* For error in the admission of incompetent evidence, defendant is entitled to a

New trial.