STATE v. KELLY BUCK CANNON AND JERRY HOYLE.

(Filed 6 March, 1968.)

**1. Criminal Law § 48—**
    Where a letter written by one defendant implicating another defendant was read by the sheriff while the second defendant was present, the silence of the second defendant is not competent as an implied admission of guilt where there is no showing that the second defendant was in a position to hear and understand what was read.

**2. Criminal Law §§ 73, 77—**
    Testimony by officers as to statements made by one defendant implicating two codefendants is hearsay and therefore inadmissible against the codefendants.

**3. Criminal Law § 177—**

The admission of incompetent evidence does not entitle defendant to judgment of compulsory nonsuit since upon the subsequent trial the State may be able to offer sufficient competent evidence to carry the case to the jury.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by defendants Cannon and Hoyle from *Campbell, J.,* May 1967 Session of CALDWELL. This case was docketed and argued as Case No. 336, Fall Term 1967, and docketed as Case No. 332, Spring Term 1968.

Four criminal prosecutions upon four separate indictments:

(1) Criminal prosecution on an indictment with two counts: The first count charges Kelly Buck Cannon on 1 March 1967 with feloniously breaking and entering a certain storehouse and building occupied by one Carl Wilson, trading as People's Grocery, with intent to commit larceny, and the second count charges Cannon with the felonious larceny from the store of Carl Wilson, trading as People's Grocery, of cigarettes, boloney meats, pocket knives, bread, and soft drinks of the value of more than $200.

(2) Criminal prosecution on an indictment charging Jerry Hoyle on 1 March 1967 with feloniously receiving and having cartons of cigarettes, boloney meat, pocket knives, and other merchandise of the value of more than $200, the property of Carl Wilson, trading as People's Grocery, knowing said articles of goods to have been theretofore feloniously stolen, taken and carried away.

(3) Criminal prosecution on an indictment charging Sonja Suddreth Williams on 1 March 1967 with the felonious breaking and entry into a warehouse and store building occupied by Carl Wilson, trading as People's Grocery, in the first count, and charging her in the second count with the larceny of goods from the store of Carl Wilson, trading as People's Grocery, of the value of more than $200.

(4) Criminal prosecution on an indictment charging Junior Willard Laws on 1 March 1967 with the felonious breaking and entry into a warehouse and store building occupied by Carl Wilson, trading as People's Grocery, in the first count, and charging him in the second count with the larceny of goods from the store of Carl Wilson, trading as People's Grocery, of the value of more than $200.

The record does not affirmatively show that the four cases were consolidated for trial, but the fair inference from the record and the charge of the court is that these four indictments were consolidated for trial. Each of the defendants pleaded not guilty. The record before us does not show the verdict of the jury in respect to Sonja Sudderth Williams and Junior Willard Laws. Defendants Williams and

Laws did not appeal. The record as first certified contained contradictory statements as to the verdicts of the jury in respect to Cannon and Hoyle. Upon remand under this Court's order, the record in the Superior Court was corrected under the supervision of Ervin, J., and as now certified by Judge Ervin the record shows the following verdicts: Verdict in the case of Kelly Buck Cannon as corrected: "Guilty of the charge of felonious breaking and entering and larceny of property of the amount of value of more $200.00." Verdict in the case of Jerry Hoyle as corrected: "Guilty of the charge of felonious receiving stolen property with a value in excess of $200.00."

From sentences of imprisonment as to each defendant, Cannon and Hoyle, each defendant appeals to the Supreme Court.

*Attorney General T. W. Bruton, Deputy Attorney General Harrison Lewis, and Staff Attorney D. M. Jacobs for the State.*
*Ted S. Douglas for defendant appellants.*

PARKER, C.J.   The State's evidence taken in the light most favorable to it and giving it the benefit of every inference to be reasonably drawn therefrom shows the following facts: On the last day of February, 1967, Carl Wilson's place of business, which he was operating under the name of People's Super Market, located on the Connelly Springs and Prison Camp Road, was broken into at night. A window which had been locked inside was prized open. A fan over the window was taken off and laid down on the sink. There were stolen from his store that night cigarettes and pocket knives of the value of more than $200.

Dewey Haynes, a witness for the State, testified in substance: He was chief of police in the town of Hudson. After 1 March 1967 Sonja Suddreth Williams brought him a letter sealed in an envelope with writing on the front of it. He does not recall exactly what it was, but it was pertaining to "if anything happened to her or she came up missing and her mother reported her missing to me, to open this letter." He had this letter at his home. Later, Sonja Williams and her mother came to his house one morning before he was dressed. He testified, "Sonja Williams told me." At this point Cannon, Laws, and Hoyle objected. Their objections were overruled, and the witness testified, "She says, 'I want to turn myself in.'" Cannon, Laws, and Hoyle objected again and their objections were overruled. Haynes testified: "And Mr. Kelly Buck Cannon came in the yard at that time. She jumped inside my door. Her mother was standing at my stoop. She says, 'I want you to open that letter and read it right now.' And she wanted me to turn it over to Deputy Sheriff Glen

Robinson. I opened the letter. Sonja Williams was present at the time I opened it. I read the letter." At this point defendants Cannon, Laws, and Hoyle objected to the contents of the letter being read to the jury. Their objections were overruled. The court instructed the jury that the jury should not consider anything contained in the letter as to defendants Cannon, Laws, and Hoyle, but only as to defendant Sonja Suddreth Williams. Then officer Haynes read the letter to the jury, which in substance is as follows: Sonja Suddreth Williams is 20 years old and wants to tell the truth, but Buck Cannon said he would kill her or beat her to death. She would like to tell the truth but she was scared. If anything happens to her, she wants Dewey Haynes or Glen Robinson to have the letter. She knows all about things. Carl Bristol was one of the guys who broke into Gamewell Store. He knew where the cash box was in the trailer she was renting in Hudson Trailer Park. Bristol laughed because he said he knew where it was at one time in Buck Cannon's house on the mountain. Buck hid it one time. Buck Cannon also has made trips hauling pills. Cannon knew she knew too much. One night Buck Cannon, Junior Laws, and she were riding around. They told her they were going to break into a few stores. They made her drive the car. They wanted to be sure she would keep her mouth shut. They broke into the store at the end of the Prison Camp Road which goes into the Connelly Springs Road. They got cigarettes, knives, boloney, a loaf of bread, and four Pepsis. The next morning they went to Jerry Hoyle's house. Tony Laws took the stuff to a man named Fred — she does not know his last name. They gave her $15 for driving the car, Junior and Buck around $20 to $25 each, Tony around $20 for selling the stuff, and Jerry $10. She has never been in trouble with the law before except for writing some checks. This is the whole truth. If she should get killed or hurt in any way, she wants the law to have the letter.

The letter was offered in evidence by Solicitor Childs. Thereupon, the court instructed the jury that the letter was only to be considered in relation to the defendant Sonja Suddreth Williams, and not as to the defendants Cannon, Laws, and Hoyle.

After Officer Haynes testified as to this letter, defendants' counsel cross-examined him in respect to what he knew about the association and relationship of Sonja Suddreth Williams and the defendant Cannon and in respect to a conversation of Officer Haynes with Cannon about clothes Cannon had belonging to Sonja Suddreth Williams.

After Dewey Haynes had testified for the State, Glen Robinson,

a member of the Sheriff's Department of Caldwell County, testified for the State in reference to a statement given him by Sonja Suddreth Williams in the presence of Officers Dewey Haynes and Deputy Gaither Eckard. Defendants Cannon, Laws, and Hoyle objected to the reading of this statement, and it was read to the jury over their objections. This statement was in substantial accord with the statement that Officer Haynes read as set forth above, and this statement specifically said that Kelly Buck Cannon, Junior Willard Laws, and Junior Williams broke and entered the People's Grocery on the Prison Camp and Connelly Springs Road and stole therefrom 90 to 100 cartons of cigarettes, about 10 pounds of boloney, a loaf of bread, four Pepsis, and a box of knives of various sizes, and also implicated defendant Jerry Hoyle in receiving from them this stolen property. Robinson testified: "Sonja Suddreth Williams made a statement in the presence of Kelly Buck Cannon while I was present. . . . She made almost the same statement to Kelly Buck Cannon. I had all the things she had said in the letter, the statement and also in front of Hoyle and Laws. . . . Kelly Buck Cannon did not say anything at the time the statement was made by the Williams woman." After Robinson had testified, he was cross-examined by defendants' counsel in respect to threats Sonja Suddreth Williams said Cannon had made against her, in respect to her wanting to get out of the unlawful business of breaking and stealing that she was engaged in, and in respect to her alleged statement. At the end of the examination, the court changed its previous ruling and made this statement to the jury: "Members of the jury, you may consider anything that Sonja Suddreth Williams either stated or put in writing as it affects the defendants Cannon, Laws and Hoyle in so far as Mr. Douglas, their attorney, has inquired of it."

Defendants Williams, Cannon, Laws, and Hoyle were jointly tried for the felonies charged against them. Defendant Williams did not testify in the case. Statements that she had made were read to the jury over defendants' objections by officers Haynes and Robinson. That evidence was clearly hearsay evidence. The record shows that when Officer Haynes started to read the written statement of defendant Williams "Mr. Kelly Buck Cannon came in the yard." It cannot be determined from the record if defendant Cannon was standing close enough to Officer Haynes to hear him read the letter of defendant Williams and to understand what it said. The mere fact that the written statement of defendant Williams was read by Officer Haynes in defendant Cannon's presence, if he was present, is not enough. The record does not show that Cannon was in a position to hear and understand what Haynes read from the letter. Conse-

quently, any silence upon the part of Cannon cannot be construed at a judicial or *quasi-judicial* investigation as an admission of the truth of the statement that Officer Haynes read. Stansbury, N. C. Evidence, 2d Ed., § 179. The record does not show what Robinson read to Cannon, and consequently Cannon's silence cannot be construed against him.

Judge Campbell in his first ruling correctly instructed the jury that anything in defendant Williams' letter that Officer Haynes read or anything that Officer Robinson testified that defendant Williams told him should not be considered as evidence against defendants Cannon, Laws and Hoyle. Afterwards Judge Campbell reversed his ruling and instructed the jury as follows: "You may consider anything that Sonja Suddreth Williams either stated or put in writing as it affects the defendants Cannon, Laws and Hoyle in so far as Mr. Douglas, their attorney, has inquired of it."

When Judge Campbell changed his ruling and admitted into evidence "anything that Sonja Suddreth Williams either stated or put in writing as it affects the defendants Cannon, Laws and Hoyle in so far as Mr. Douglas, their attorney, has inquired of it," there was no more cross-examination of the State's witnesses except that Mr. West elicited on cross-examination that the State's witness Robinson stated he obtained a written statement from Broughton Hospital which he had requested by telephone. The substance of this written statement which was read by Mr. Robinson to the jury is as follows: Sonja Suddreth Williams was admitted to Broughton Hospital, Morganton, North Carolina, on 16 December 1966 by voluntary admission from Caldwell County, that she was discharged from that hospital on 20 December 1966, that she was considered to have recovered from a depressive illness, and that she was not considered to be an incompetent person. It seems manifest to us from Judge Campbell's general and vague statement to the jury as above quoted that the jury could not understand clearly what was admissible in evidence in respect to the defendants and what was not admissible, but it seems clear that the admission was disastrous to the rights of the appealing defendants Cannon and Hoyle. Certainly, the effect of Judge Campbell's ruling was to admit evidence when its probative force depended in part upon the competency and credibility of Sonja Suddreth Williams instead of the officers Haynes and Robinson by whom the State sought to produce the evidence. This is purely hearsay evidence. Stansbury, N. C. Evidence, 2d Ed., § 138. Defendants Cannon and Hoyle assign the admission of this evidence as error. The assignment of error is good.

Defendants assign as error the denial of their motions for judg-

ment of compulsory nonsuit. That assignment of error is overruled. Though the court below, in denying the motions for nonsuit, acted upon evidence which we now hold to be incompetent, yet if this evidence had not been admitted, the State might have followed a different course and introduced competent evidence sufficient to carry the case to the jury. *S. v. Stevens*, 264 N.C. 737, 142 S.E. 2d 588; *S. v. Hall*, 264 N.C. 559, 142 S.E. 2d 177; *S. v. McMilliam*, 243 N.C. 771, 92 S.E. 2d 202.

New trial as to both defendants.

HUSKINS, J., took no part in the consideration or decision of this case.