STATE OF NORTH CAROLINA v. GERALDINE GLADDEN

No. 94

(Filed 10 November 1971)

1. **Criminal Law § 76— defendant's statements to an officer — admissibility**

   Police officer's testimony on voir dire provided ample evidence to support the court's findings of fact and conclusions of law that defendant had been fully advised as to her constitutional rights prior to making a statement to the officer and that any statement she made was freely and voluntarily made without any threats against her or any promise of reward.

2. **Criminal Law § 75— in-custody interrogation — statements made in defendant's home**

   Defendant's conversation with a police officer in her own home when the officer, upon receiving a call from defendant, went there to investigate a homicide, was not an in-custody interrogation within the scope of Miranda v. Arizona, 384 U.S. 436, where nothing in the record indicates that defendant was in custody or otherwise deprived of her freedom of action prior to or during her conversation with the officer, or that defendant at that time had been charged with any criminal offense.

3. **Homicide § 26— second degree murder — instructions — "intentional" shooting**

   Failure of the court in a single instance to charge that, in order to find defendant guilty of second degree murder, the State must prove beyond a reasonable doubt that defendant "intentionally" shot deceased was not prejudicial error where in subsequent portions of the charge the court used the word "intentionally" in every instance in which a substantially similar instruction was given.

**4. Homicide § 9— self-defense — real or apparent necessity**

The right of self-defense rests upon necessity, real or apparent; and, in the exercise of his lawful right of self-defense, a person may use such force as is necessary or apparently necessary to protect him from death or great bodily harm.

**5. Homicide § 9— killing in self-defense — apparent necessity**

One may kill in self-defense even though to kill is not actually necessary to avoid death or great bodily harm if he believes it to be necessary and has a reasonable ground for that belief, it being for the jury to determine the reasonableness of the belief from the facts and circumstances as they appeared to him at the time of the killing.

**6. Homicide § 28— self-defense — instructions on apparent necessity**

While neither "apparent" nor "apparently" appears in the court's instructions on self-defense in this homicide prosecution, the court sufficiently instructed the jury on apparent necessity when it charged that defendant, in the lawful exercise of her right of self-defense, could stand her ground in her own home, without retreating, "and use whatever force she reasonably believed to be necessary to save herself from death or great bodily harm" and that it was for the jury "to determine the reasonableness of the Defendant's belief, from the circumstances as they appeared to her at the time."

APPEAL by defendant from *Collier, J.,* March 22, 1971 Session of RANDOLPH Superior Court, transferred for initial appellate review by the Supreme Court under general order of July 31, 1970, entered pursuant to G.S. 7A-31(b) (4).

Defendant was indicted, in the form prescribed by G.S. 15-144, for the murder of "Arron Robert Golston" on July 27, 1969, and tried thereon for murder in the second degree or such lesser included offense as the law and the evidence might justify.

The State offered the testimony of Dr. Richard P. Hudson, Jr., Chief Medical Examiner of the State of North Carolina, and of Lt. Neil Cockerham of the Detective Division of the Asheboro Police Department.

Dr. Hudson testified that he performed an autopsy on the body of Aaron Robert Colston and that in his opinion Colston's death "was caused from hemorrhage from gunshot wounds of the abdomen."

The testimony of Lt. Cockerham consists largely of statements made to him by defendant in her own home when he went there to investigate the homicide. She informed him that on July 26, 1969, a Saturday, Colston came to her residence in

Asheboro about 8:45 p.m. He had come there and had spent the weekend "many times" in the past. Colston and his wife had kept defendant's son until he was thirteen years old. Upon Colston's arrival on this occasion, he and defendant sat around and drank some intoxicating beverages. They became involved in an argument, which grew louder and more intense. During the altercation Colston cursed and contemned Lester Bright. Colston insisted that defendant go back to Albemarle and stay with him and with Mrs. Colston. He was "high-tempered." He put his hand in his pocket. She was afraid of a knife. She did not see a knife or a gun but was afraid. At that time, "she shot him twice with a handgun, pistol." (Cockerham *understood* that Colston and defendant were blood first cousins and that Lester Bright was defendant's husband.)

Defendant offered the testimony of Barney Trogdon and of Elsie (Cuffie) McMillan.

Trogdon testified in substance: He is seventy-one years old. Colston "was not quite as old." Colston was a "well-built," "heavy-set man," weighing 170 to 180 pounds and was "around 5'6" or 5'8" tall." Trogdon looked after Lester's garden and on this occasion went to defendant's home because he had "a tiller" there. He and Colston arrived at defendant's home about the same time. Defendant was not there. Upon defendant's return, Colston and defendant became involved in an argument. Colston was insisting that defendant go home with him and she was refusing. Although no fighting or shooting occurred while he was there, he could see "trouble was coming up" and he "didn't want to get involved." Trogdon testified: "He [Colston] told her he had a home for her as long as she lived. She [defendant] said she couldn't go and she told him not to stay there and he said, 'I'll stay if I dam well please.' It got hot when I left." Trogdon's testimony contains no reference to McMillan.

McMillan testified in substance: He had been at defendant's residence for approximately "20 or 30 minutes" when the shooting occurred. The argument between Colston and defendant continued until Colston was shot. While in the kitchen, Colston had slapped and kicked defendant. Colston put his hand in his pocket and defendant backed from the kitchen to her bedroom. Colston followed her "until she got the pistol." She came out of the bedroom with the pistol in her hand. Although she asked him to leave, Colston did not leave but kept

trying "to walk up on her." Defendant told Colston not to walk up on her with his hands in his pockets. She asked him, "Please, take your hands out." He did not comply and she shot him one time. He gritted his teeth and took "a step away towards Geraldine." She fired a second time and he fell. The shooting occurred in the living room. Defendant called the police and the ambulance. McMillan "never did see a weapon of any kind in the hands of" Colston nor did he hear Colston make any statement as to "what he was going to do to [defendant] with what he had in his pocket." McMillan testified he left before the investigating officers arrived; that he did not talk to any investigating officer; and that, prior to trial, defendant's counsel was the only person he had told concerning what he saw on the occasion of the shooting.

The jury returned a verdict of guilty of voluntary manslaughter and judgment imposing a sentence of eighteen to twenty years was pronounced.

*Attorney General Morgan, Assistant Attorney General Harris and Trial Attorney Cole for the State.*

*Bell, Ogburn & Redding, by John N. Ogburn, Jr., and J. Howard Redding for defendant appellant.*

BOBBITT, Chief Justice.

Defendant excepted to the findings of fact and conclusions of law made by Judge Collier at the conclusion of a *voir dire* hearing that was held to determine the admissibility of Cockerham's testimony about statements made to him by defendant. Defendant assigns error on the ground the evidence did not support the court's findings and conclusions.

[1] On *voir dire* Cockerham testified that before he permitted defendant to tell what had occurred, he advised her in detail of each of her constitutional rights in the manner required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974 (1966), as a prequisite to an in-custody interrogation. Defendant did not testify at *voir dire* or at trial. Judge Collier made findings of fact and conclusions of law to the effect that defendant had been fully advised as to her constitutional rights and that any statement she made was freely and voluntarily made without any threats against her or any promise of reward. Cockerham's testimony on *voir dire* pro-

vided ample evidence to support the court's findings of fact and conclusions of law.

**[2]** If considered an in-custody interrogation, Cockerham's testimony as to statements made by defendant was competent. However, under the circumstances of this case, we are of opinion and hold that the conversation of defendant with Cockerham in defendant's own home was not an in-custody interrogation. Apparently, having called the police, defendant wanted an opportunity to explain what had happened. Defendant had known Cockerham as an officer for at least fifteen years; and, upon his arrival, she invited him into her home where the conversation occurred. Nothing in the record indicates defendant was in custody or otherwise deprived of her freedom of action prior to or during her conversation with Cockerham. Nor is there any indication that defendant at that time had been charged with any criminal offense.

*Miranda* involved custodial interrogations. The majority opinion, delivered by Mr. Chief Justice Warren, states: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 16 L. Ed. 2d at 706, 86 S.Ct. at 1612, 10 A.L.R. 3d at 993. The opinion states further: "Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Id.* at 477-78, 16 L. Ed. 2d at 725-26, 86 S.Ct. at 1629-30, 10 A.L.R. 3d at 1013. The opinion also states: "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.* at 478, 16 L. Ed. 2d at 726, 86 S.Ct. at 1630, 10 A.L.R. 3d at 1014. See *State v. Meadows,* 272 N.C. 327, 336, 158 S.E. 2d 638, 644 (1968).

In our view, the requirements of *Miranda* prerequisite to an in-custody interrogation do not apply to the present factual

situation. Thus, Cockerham's testimony about what defendant said was competent for two separate reasons: compliance with *Miranda* and inapplicability of *Miranda*.

Defendant assigns as error the denial of her motion at the conclusion of all the evidence for judgment as in case of nonsuit. Her contention is based on the asserted incompetency of Cockerham's testimony as to her statements. Absent this testimony, she contends the evidence shows she acted in self-defense. Since Cockerham's testimony was competent, we need not consider whether the evidence offered by defendant, if accepted by the jury, was sufficient to exonerate her on the ground of self-defense.

[3] Defendant excepted to the following portion of the court's charge, *viz.*: "Now, I charge you, Members of the Jury, for you to find the Defendant guilty of murder in the second degree, the State must prove two things beyond a reasonable doubt; first, that the Defendant shot Aaron Robert Colston with a deadly weapon, and I instruct you that a firearm is a deadly weapon; and, second, that the deceased, excuse me, Aaron Robert Colston's death was a natural and probable result of the Defendant's act. Now, to find the Defendant guilty of murder in the second degree, the State must prove beyond a reasonable doubt that the Defendant intentionally shot Aaron Robert Colston with a deadly weapon and that Aaron Robert Colston's death was a natural and probable result of the Defendant's act. The law then presumes that the killing was unlawful and done with malice which, nothing else appearing, constitutes murder in the second degree."

Defendant concedes that the second and third sentences of this excerpt from the charge are in accord with our decisions. See *State v. Barrow*, 276 N.C. 381, 390, 172 S.E. 2d 512, 518 (1970), and cases cited; *State v. Winford*, 279 N.C. 58, 65, 181 S.E. 2d 423, 427-28 (1971); *State v. Duboise*, 279 N.C. 73, 81-82, 181 S.E. 2d 393, 398 (1971). With reference to the phrase "natural and probable result," see *State v. Woods*, 278 N.C. 210, 219, 179 S.E. 2d 358, 363-64 (1971).

Defendant assigns as error the first sentence of the instruction on the ground the word "intentionally" was omitted. Subsequent to the portion of the charge assigned as error, the court used the word "intentionally" in every instance in which

a substantially similar instruction was given. Moreover, near the end of the charge, the court instructed the jury as follows: "If the State has failed to prove from the evidence and beyond a reasonable doubt that she *intentionally* shot him or that his death was a natural and probable result of Geraldine Gladden's act, it would be your duty to find the Defendant not guilty." (Our italics.) In our view, the inadvertent omission of the word "intentionally" in a single instance could not have misled or confused the jury, especially when there is no suggestion that the firing of the pistol by defendant was unintentional.

[4, 5] Defendant assigns as error the court's instructions relating to self-defense. As defendant correctly contends, the right of self-defense rests upon necessity, real or apparent; and, in the exercise of his lawful right of self-defense, a person may use such force as is necessary or apparently necessary to protect him from death or great bodily harm. *State v. Jennings*, 276 N.C. 157, 164-65, 171 S.E. 2d 447, 452-53 (1970), and cases cited. In this connection, the full significance of the phrase "apparently necessary" is that a person may kill even though to kill is not actually necessary to avoid death or great bodily harm, if he believes it to be necessary and has a reasonable ground for that belief. The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to him at the time of the killing. *State v. Kirby*, 273 N.C. 306, 160 S.E. 2d 24 (1968), and cases cited.

[6] Defendant contends the court failed to instruct properly with reference to *apparent necessity*. While neither "apparent" nor "apparently" appears in the court's instructions, the court did charge the jury that defendant, in the lawful exercise of her right of self-defense, could stand her ground in her own home, without retreating, "and use whatever force she reasonably believed to be necessary to save herself from death or great bodily harm" and that it was for the jury "to determine the reasonableness of the Defendant's belief, from the circumstances as they appeared to her at the time." In our view, the instructions were substantially in accord with our decisions. Defendant's contention relates more to semantics than to substance.

We deem it unnecessary to discuss assignments of error directed to other excerpts from the charge. None discloses prejudicial error.

It is noted: The indictment charges the murder of "Arron Robert Golston." Deceased is referred to in the evidence and in the court's charge by the name of "Aaron Robert Colston." The evidence offered by the State and by defendant as to the circumstances under which the deceased was shot and killed by defendant dispels doubt as to the identity of the deceased. No question has been or is raised by defendant on account of the discrepancy.

Accordingly, the verdict and judgment of the court below will not be disturbed.

No error.