STATE OF NORTH CAROLINA v. CONNELL DECK

No. 6

(Filed 10 April 1974)

**1. Homicide § 16— dying declarations**

    Statements by a stabbing victim were not admissible as dying declarations where there was no indication that the victim believed he was dying or that he was in full apprehension of his danger of death when he made the statements.

**2. Criminal Law § 73; Evidence § 35— spontaneous utterances — exception to hearsay rule**

    Where a witness testified that she called to deceased when she saw him and another man running up the highway, that upon her offer of assistance deceased stopped running and came over to her, and that she asked deceased what was wrong, statements made by deceased to the witness, "My God, that man tried to rob me" or "did rob me" and "I've been stabbed with this" were admissible under an exception to the hearsay rule permitting the admission of spontaneous utterances.

**3. Homicide § 9— self-defense — real or apparent necessity**

    The right to act in self-defense is based upon necessity, real or apparent, and a person may use such force as is necessary or apparently necessary to save himself from death or great bodily harm in the lawful exercise of his right of self-defense.

**4. Homicide § 9— right to kill in self-defense**

    A person may kill even though it be not necessary to kill to avoid death or great bodily harm if he believes it to be necessary and he has reasonable grounds for such belief, it being for the jury to determine the reasonableness of his belief from the facts and circumstances as they appeared to the accused at the time of the killing.

**5. Homicide § 28— necessity for charging on self-defense**

    The trial court is required to charge on self-defense when there is competent evidence of such defense even absent a special request for such instruction.

**6. Homicide § 28— failure to charge on self-defense**
The trial court in a homicide case erred in failing to instruct on self-defense where the State's evidence would permit, but not require, the jury to find that: (1) defendant was without fault in bringing on the difficulty, (2) deceased was armed with and first assaulted defendant with a deadly weapon, (3) the fatal blow was struck during a struggle for the weapon first used by deceased and (4) the defendant used such force as was necessary or as appeared to him to be necessary to save himself from death or great bodily harm.

APPEAL by defendant from *Webb, S.J.*, 9 April 1973 Session of NASH Superior Court.

Criminal prosecution on an indictment charging that "Connell Deck . . . on the 19th day of December 1972 . . . feloniously, wilfully, and of his malice aforethought, did kill and murder William Randolph Wheless . . . . "

The State offered evidence which tended to show that on the morning of 19 December 1972, defendant went to a jewelry store operated by William Randolph Wheless in Spring Hope, North Carolina. Mrs. Wheless, the wife of decedent, was the only person in the store. Defendant and Mrs. Wheless engaged in some conversation concerning the possible purchase of a ring, and defendant examined some watches in a display case. Mr. Wheless returned in a very short time, and Mrs. Wheless departed, leaving only her husband and defendant in the store.

The State's only evidence as to the crucial events which took place in the store was the testimony of SBI Agent Matt Gwynne concerning in-custody statements made to him by defendant. According to defendant's statement, he walked into the Wheless Jewelry Store to have a new crystal put in his watch. After Mrs. Wheless left, Mr. Wheless was examining his watch and called defendant behind the counter to show him a diagram and some "green stuff" that was in the watch. Mr. Wheless told defendant that it would cost $2.10 to fix the watch, and defendant replied that he could not afford to have the watch fixed. Mr. Wheless then tried to trade him an electric watch which was lying on the counter beside defendant's watch. When defendant reached for his watch, Mr. Wheless reached for an ice pick which was lying nearby. Defendant thereupon pulled his knife from his pocket, but dropped it on the floor when Mr. Wheless scratched his hand with the ice pick. Defendant's statement as related by SBI Agent Gwynne continued:

" . . . Deck stated that he grabbed the man's left hand and grabbed the man around the neck and got the man turned around so that the man's back was facing him.

"Deck stated he got control of the ice pick and that he stabbed the man in the chest with the ice pick and that he tried to pull the ice pick out of him but that the pick part of the ice pick came loose from the handle. Deck further stated that after he stabbed the man in the chest he and the man fell over the watch counter display case. Deck stated the man was moving around on the floor and that he heard the jewelry store man yell something out and that he ran through the alley between the Sears store and the Spring Hope Grocery store out behind the old school and came out to Highway 581 north."

The State's evidence further disclosed that defendant ran out of the store and was pursued by Mr. Wheless for about 100 feet. Charlotte Lathy saw him running up Highway 64 and called to inquire if she could help. Mr. Wheless then started walking toward the Sears Department Store and told her, "My God, that man tried to rob me" or "did rob me." He then said "I've been stabbed with this," and he held the pick in his hand. She told deceased to sit down so that she could get some help for him. He then fell to the ground and shortly thereafter stopped breathing.

The State also offered testimony of Dr. D. E. Scarborough, admitted as an expert pathologist, who testified that in his opinion "the primary cause of death was related to the stab wound . . . . "

At the close of the State's evidence, defendant moved for judgment as of nonsuit.

This motion was overruled.

Defendant offered no evidence, and again moved for judgment as of nonsuit. The motion was overruled.

The jury returned a verdict of guilty of murder in the first degree and defendant appealed from a judgment sentencing him to imprisonment for the term of his natural life. He failed to perfect his appeal in due time, and we allowed defendant's petition for writ of certiorari on 17 August 1973.

*Attorney General Robert Morgan by Assistant Attorney General James E. Magner, Jr. for the State.*

*Chambers, Stein, Ferguson & Lanning, by Charles L. Becton for defendant appellant.*

BRANCH, Justice.

Defendant first contends that the trial court erred by admitting into evidence, over objection, the testimony of Charlotte Lathy concerning statements made to her by the deceased.

In this connection, the record discloses:

"A. I saw Mr. Wheless. In front of the Sears Store, running by. And I went to the back of the store and went out through the back entrance and saw Mr. Wheless and another man running up Highway 64, and I called to him and asked him what was wrong and could I help him, and he started to walk towards the Sears store then and I went over to meet him. When he came closer to me I asked him again what was wrong and he said, 'My God, that—'.

MR. ROSSER: OBJECTION.

COURT: OVERRULED.

EXCEPTION NO. 14.

Q. Go ahead and tell what he said to you.

A. He said, 'My God, that man tried to rob me,' or 'did rob me'. I don't remember which he said. And then he said—

MR. ROSSER: MOTION TO STRIKE.

COURT: OVERRULED.

EXCEPTION NO. 15.

Q. Go ahead.

A. And then he said, 'I've been stabbed with this,' and he held the pick in his hand.

EXCEPTION NO. 16."

[1] Defendant contends that this testimony was inadmissible as a dying declaration. He argues that there is no indication that the deceased believed himself to be dying or was in full appre-

hension of his danger of death. We agree. However, the trial judge did not state the basis upon which he admitted the evidence. His ruling might well have been based upon an entirely different reason.

Evidence is called hearsay, " . . . when its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness by whom it is sought to produce it." *State v. Robbins,* 275 N.C. 537, 169 S.E. 2d 858; *State v. Cannon,* 273 N.C. 215, 159 S.E. 2d 505; 1 Stansbury's North Carolina Evidence (Brandis Revision 1973) § 138.

There are many exceptions to the Hearsay Rule. These exceptions are generally justified because of circumstances which make the declaration especially trustworthy. The dying declaration is one recognized exception to this rule. Another and equally operative exception relates to spontaneous utterances.

"When a startling or unusual incident occurs, the exclamations of a participant or a bystander concerning the incident, made spontaneously and without time for reflection or fabrication are admissible . . . The trustworthiness of the present type of utterance lies in its *spontaneity*—the unlikelihood of fabrication because the statement is made in immediate response to the stimulus of the occurrence and without opportunity to reflect . . . . " 1 Stanbury's North Carolina Evidence (Brandis Revision 1973) § 164. *Hargett v. Insurance Co.,* 258 N.C. 10, 128 S.E. 2d 26; *Tart v. Register,* 257 N.C. 161, 125 S.E. 2d 754; *State v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84.

This exception was applied in *State v. Spivey,* 151 N.C. 676, 65 S.E. 995, where deceased heard a noise under his house and went outside to investigate. His family heard a shot, and within one or two minutes went outside to look. They found deceased down on his hands and knees at the corner of the house. He made a statement to his wife as to the identity of his assailant. At trial, the wife of deceased was allowed to testify over objection that, "Frank told me Henry Spivey shot him; said, 'Oh, Jenny, Henry Spivey shot me, because I saw him.' " In holding that the statement of deceased was admissible, the Court quoted from the concurring opinion of Connor, J., in *Seawell v. R. R.,* 133 N.C. 515, 45 S.E. 850, as follows: "The element of time is not always material . . . The spontaneous, unpremeditated character of the declarations, and the fact that they seem to be the natural and necessary concomitants of some relevant transaction

in which their author was a participant, constitute the; basis of their admission as evidence." The Court, speaking through Manning, J., further pointed out that such statements derive their reliability from their spontaneity when (1) there has been no sufficient opportunity to plan false or misleading statements, (2) they are impressions of immediate events and (3) they are uttered while the mind is under the influence of the activity of the surroundings.

[2] In instant case, the witness testified that she first called to deceased when she saw him and another man running up the highway. Upon her offer of assistance, he stopped running and came over to her. She again asked him what was wrong. At that point he said, "My God, that man tried to rob me" or "did rob me," and "I've been stabbed with this" holding the pick in his hand.

We think the challenged statements were made in immediate response to the stimulus of the occurrence and without opportunity to reflect or fabricate. Further, decedent had no motive for fabrication. The time lapse between the completion of the alleged crime, the ensuing chase and the statements made to the witness was negligible.

In our opinion, the challenged statements were spontaneous utterances and were therefore correctly admitted by the trial judge.

Defendant next contends that the trial judge erred by refusing to instruct the jury on the law of self-defense.

[3, 4] The right to act in self-defense is based upon necessity, real or apparent, and a person may use such force as is necessary or apparently necessary to save himself from death or great bodily harm in the lawful exercise of his right of self-defense. A person may kill even though it be not necessary to kill to avoid death or great bodily harm if he believes it to be necessary and he has reasonable grounds for such belief. The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the accused at the time of the killing. *State v. Gladden,* 279 N.C. 566, 184 S.E. 2d 249; *State v. Jennings,* 276 N.C. 157, 171 S.E. 2d 447; *State v. Kirby,* 273 N.C. 306, 160 S.E. 2d 24.

[5] The Court is required to charge on all substantial and essential features of a case which arise upon the evidence even

absent a special request for the instruction. *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328; *State v. Todd,* 264 N.C. 524, 142 S.E. 2d 154; *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769; *State v. Brady,* 236 N.C. 295, 72 S.E. 2d 675; *State v. Melton,* 187 N.C. 481, 122 S.E. 17.

When supported by competent evidence, self-defense unquestionably becomes a substantial and essential feature of a criminal case.

[6] In instant case, defendant's counsel requested the Court to instruct on self-defense, and the Court refused to so instruct.

The State's evidence presents testimony which would permit, but not require, the jury to find that: (1) defendant was without fault in bringing on the difficulty, (2) deceased was armed with and first assaulted defendant with a deadly weapon, (3) the fatal blow was struck during a struggle for the weapon first used by deceased and (4) the defendant used such force as was necessary or as appeared to him to be necessary to save himself from death or great bodily harm.

We hold that the evidence in this case was sufficient to require the trial judge to state and apply the law of self-defense to the facts of the case. The Court's failure to so do constituted prejudicial error.

We do not deem it necessary to discuss remaining assignments of error since the questions there presented may not arise at the next trial.

For reasons stated, there must be a

New trial.