State v. Smith

STATE OF NORTH CAROLINA v. CHARLES JAMES SMITH

No. 7818SC361

(Filed 5 December 1978)

1. **Homicide § 30.3— first degree murder charged—evidence of involuntary manslaughter insufficient to require instruction**

    Though decedent's daughter testified in a first degree murder prosecution that defendant told her that he had stabbed decedent but that he didn't mean to, the trial court did not err in failing to submit to the jury the lesser included offense of involuntary manslaughter, since the record did not reveal that the homicide resulted from an accident; defendant admitted to a police officer that he did "slash" the deceased in self-defense; and the evidence showed that defendant took his knife out of his boot before he stabbed deceased.

2. **Homicide § 28.4— first degree murder—right to stand ground—no instruction required**

    In a prosecution for first degree murder defendant was not entitled to an instruction concerning one's right to defend himself in his own home or the home or curtilage of his host, since the evidence tended to show that the fatal stabbing occurred in a courtyard which served as a common area for all the apartments in a complex, rather than in the apartment of defendant's host.

3. **Homicide § 28.2— self-defense—reasonableness of defendant's apprehension of bodily harm—possession of weapon by decedent**

    The trial court in a first degree murder prosecution properly instructed the jury with respect to self-defense when he stated that the jury should determine the reasonableness of defendant's belief that he was about to suffer death or serious bodily harm, and one of the circumstances to be considered in determining the reasonableness of defendant's belief was whether decedent had a weapon in his possession.

4. **Homicide § 27.1— voluntary manslaughter—jury instructions proper**

    The trial court in a first degree murder prosecution properly instructed the jury concerning the lack of malice if defendant acts in the heat of passion upon sudden provocation, and the court adequately explained how malice is negated in the case of one defending himself.

**5. Homicide § 21.5— first degree murder—sufficiency of evidence**

Evidence was sufficient for the jury in a first degree murder prosecution where it tended to show that defendant and deceased who was drunk exchanged harsh words; defendant drew his knife but put it away when he saw that deceased had no weapon; defendant and deceased then went to separate apartments in an apartment complex for about 15 minutes; and defendant then rushed out of his apartment to the common area of the apartments where he and deceased engaged in a scuffle during which defendant fatally stabbed deceased.

**6. Homicide § 24.1— presumptions arising from use of deadly weapon—jury instructions proper**

Defendant in a first degree murder prosecution was not deprived of due process of law by the trial court's charge to the jury that it could infer malice and unlawfulness simply from the fact that the defendant used a deadly weapon in stabbing the deceased.

APPEAL by defendant from *Seay, Judge*. Judgment entered 15 December 1977 in Superior Court, GUILFORD County. Heard in the Court of Appeals 24 August 1978.

Defendant was charged in a proper bill of indictment with murder in the first degree of James Henry Hawks on or about 18 September 1975 and was convicted by a jury of murder in the second degree. Defendant was given an active sentence of not less than thirty (30) nor more than forty (40) years in the State Prison.

At the trial, the State presented evidence tending to show that: on 18 September 1975, James Hawks was helping a girl to move into an apartment complex in Greensboro where his daughter, Patricia Horne, lived; defendant was visiting the apartment of one Ray Pulliam at the same time, and his automobile was in the way of the people attempting to move in; Patricia asked defendant to move his car, which he did; at that point, James Hawks came out of the girl's apartment and began directing abusive language toward defendant; Hawks was staggering and did not have control of his faculties; he told defendant he had a gun and reached for his pocket; defendant pulled out his switchblade knife, opened it, and started toward Hawks; Patricia told defendant that Hawks was drunk and not to pay any attention to him, that he did not have a gun and that he acted abusive like that when he was drunk; Hawks pulled his hand out of his pocket

and did not have a weapon; defendant put his knife away and returned to Pulliam's apartment, and Hawks went to his daughter's apartment for a few moments; Hawks then yelled at his daughter, and at this point, defendant came out of Pulliam's apartment again; Hawks stated that he would slap defendant and swung at defendant but missed; there was a scuffle between the two men, and Hawks staggered back several steps and fell over; he had been fatally stabbed in the abdomen.

Patricia Horne testified, "I asked Buster (defendant) if he had stabbed my father and he said, 'Yes, I stabbed him, but I didn't mean to.' "

The defendant's evidence tended to show from the testimony of Ray Pulliam that Wayne Walker had inflicted the fatal wound. Defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Joan H. Byers and Associate Attorney T. Michael Todd, for the State.*

*Norman B. Smith, for defendant appellant.*

ERWIN, Judge.

[1] The defendant brings forward twelve questions on appeal and contends that if error is found in any of them, the defendant is entitled to a new trial. We find no reversible error for the reasons that follow.

The first question reads:

"I. Did the superior court commit prejudicial and reversible error in failing to submit to the jury the lesser included offense of involuntary manslaughter?"

Involuntary manslaughter is the unintentional killing of a human being without either express or implied malice: (1) by some unlawful act not amounting to a felony or naturally dangerous to

human life; or (2) by an act or omission constituting culpable negligence. *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963), and *State v. Honeycutt*, 250 N.C. 229, 108 S.E. 2d 485 (1959).

The trial court must instruct the jury as to the lesser-included offense of the crime charged if there is evidence upon which the jury could find that the defendant committed the lesser offense. *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976), and *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971). Defendant relies on a statement made by him to the decedent's daughter, who testified, " 'Yes, I stabbed him, but I didn't mean to.' As to how Buster said this to me, it was like he didn't really care." The record does not reveal that the homicide resulted from an accident. Defendant admitted to one Police Officer Kisby that he did "slash" the deceased in self-defense. The evidence shows that defendant took his knife out of his boot before he stabbed the deceased. We hold that the evidence in this case would not support a verdict of involuntary manslaughter. We do not find error in the court's failing to charge on this issue.

[2]   Question II reads:

"II. Did the superior court commit prejudicial and reversible error by failing to instruct the jury that where a person who is free from fault in bringing on a difficulty is attacked in his own home or in the home or within the curtilage of the home of his host, the law imposes upon him no duty to retreat before he is justified in fighting in self-defense, regardless of whether he is attacked with deadly force or is only the victim of a simple assault?"

Officer Johnson testified:

"[I]n other words, the apartment complex is a horseshoe and the sidewalks go in in the front. And on the southwest side, on the interior of the courtyard, Mr. Hawks was lying on the courtyard just off the sidewalk to the east side of the sidewalk. As to how far his body was to the nearest apartment complex, it was approximately 25 feet into the courtyard from the backside of the complex."

From the record, it appears to us that the courtyard was set up as a common area to be used by all the tenants with no special

rights of possession to any. The charge suggested by this question would not have been warranted under the evidence of this case. All the evidence set forth in the record is that the fatal stabbing occurred outside the apartments in the common area. *See State v. Pearson*, 20 N.C. App. 203, 200 S.E. 2d 814 (1973), *cert. denied*, 284 N.C. 621 (1974). We overrule this assignment of error. In doing so, we also answer Questions III and IV in the negative.

[3] Question V reads:

"V. Did the superior court commit prejudicial and reversible error in its instruction to the jury on the subject of reasonableness of the defendant's belief that he was in danger of death or great bodily harm, since the superior court stressed that the jury should consider whether or not James Hawks actually had a weapon in his possession in determining the reasonableness of the defendant's apprehension?"

The defendant complains of the trial court's charge to the jury as follows:

"[It is for you, the jury, to determine the reasonableness of the defendant's belief from the circumstances as they appeared to him at the time. In making this determination, you should consider the circumstances, as you find them to have existed from the evidence, including the size, age and strength of the defendant as compared to James Henry Hawks, the fierceness of the assult (sic), if any, being made upon the defendant, Charles James Smith, whether or not James Hawks had a weapon in his possession, and the reputation, if any, of James Henry Hawks for danger and violence.]

\*       \*       \*

[Further, members of the jury, the killing of James Henry Hawks would be justified on the ground of self-defense, and it would be your duty to return a verdict of not guilty under the circumstances as they existed at the time of the killing, the State of North Carolina has failed to satisfy you beyond a reasonable doubt of the absence on the part of

Charles James Smith of a reasonable belief that he was about to suffer death or serious bodily harm at the hands of James Henry Hawks or that Charles James Smith used more force than reasonably appeared to him to be necessary, or that Charles James Smith was the aggressor.]"

In *State v. Deck*, 285 N.C. 209, 214, 203 S.E. 2d 830, 834 (1974), our Supreme Court, in an opinion by Justice Branch, stated the general rule applicable to the defense of self-defense as follows:

"The right to act in self-defense is based upon necessity, real or apparent, and a person may use such force as is necessary or apparently necessary to save himself from death or great bodily harm in the lawful exercise of his right of self-defense. A person may kill even though it be not necessary to kill to avoid death or great bodily harm if he believes it to be necessary and he has reasonable grounds for such belief. The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the accused at the time of the killing. *State v. Gladden*, 279 N.C. 566, 184 S.E. 2d 249; *State v. Jennings*, 276 N.C. 157, 171 S.E. 2d 447; *State v. Kirby*, 273 N.C. 306, 160 S.E. 2d 24."

*Deck, supra*, was followed in *State v. Pearson*, 288 N.C. 34, 215 S.E. 2d 598 (1975). We cannot find any distinction between the charge before us and those approved by our Supreme Court. We find no merit in this contention of the defendant.

[4]  Question VI reads:

"VI. Did the superior court commit prejudicial and reversible error in failing to define fully for the jury the circumstances in which the killing is without malice and amounts to voluntary manslaughter — particularly with reference to the defendant who uses excessive force when defending himself or whose apprehension of great bodily harm is unreasonable?"

The trial court charged the jury as follows:

"[A killing is not committed with malice if the defendant acts in the heat of passion upon sudden provocation. The heat of passion does not mean mere anger. It means that the

defendant Charles James Smith's state of mind was at the time so violent as to overcome his reason, so much so that he could not think to the extent necessary to form a deliberate purpose and control his actions — adequate provocation may consist of anything which has a natural tendency to produce such passion in a person of average mind and disposition — and the stabbing took place so soon after the provocation that the passion of a person of average mind and disposition would not have cooled.]"

Defendant contends that the charge was not adequate to explain how malice is negated in the case of one defending himself. However, the trial judge charged further:

"The burden of proof is on the State of North Carolina to prove beyond a reasonable doubt that the defendant, Charles James Smith, did not act in self-defense. However, if the State proves beyond a reasonable doubt that the defendant, Smith, though otherwise acting in self-defense, used excessive force, or was the aggressor, though he had no murderous intent when he entered the fight, the defendant would be guilty of voluntary manslaughter."

When the above portions of the charge are taken together plus the remainder of the charge, we find no error. "A charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct." *State v. McWilliams*, 277 N.C. 680, 684-5, 178 S.E. 2d 476, 479 (1971). *See also State v. Alexander*, 279 N.C. 527, 184 S.E. 2d 274 (1971); *State v. Cook*, 263 N.C. 730, 140 S.E. 2d 305 (1965); 4 Strong, N.C. Index 3d, Criminal Law, § 168, p. 853.

[2] In Question VIII, the defendant contends that the trial court's instruction to the jury was incomplete, in that the court failed to charge the jury "of the right of the defendant to stand his ground and not retreat in the face of a felonious assault and its failure to give an instruction on his right to stand his ground and not retreat, regardless of the character of the assault if he was assaulted within the curtilage of the home of his host." We hold the evidence in the case *sub judice* does not warrant such an instruction. The evidence shows that the stabbing occurred in the common area of the apartment complex.

[5]   The ninth question reads:

> "IX. Did the superior court commit prejudicial and
> reversible error by denying the defendant's motion for non-
> suit as to the charge of murder in the first degree and by
> submitting to the jury as a possible verdict the charge of
> murder in the second degree?"

Murder in the first degree is the unlawful killing of a human be-
ing with malice and with premeditation and deliberation. 6
Strong, N.C. Index 3d, Homicide, § 4, p. 530. Viewing the evidence
most favorable to the State, as required on a motion for judgment
as of nonsuit, we find no error. Premeditation and deliberation
could have been found from defendant after having had harsh
words with the deceased, waiting around some fifteen minutes,
and then rushing outside to engage the deceased in a fight, from
which he received a fatal stab wound.

    This Court held in *State v. Alston*, 17 N.C. App. 718, 719-20,
195 S.E. 2d 312, 313-14 (1973):

> "Defendant assigns as error that the trial judge submit-
> ted to the jury, and instructed thereon, the issue of first
> degree murder. The jury actually found defendant guilty of
> only second degree murder.
>
> 'Where defendant is convicted of murder in the second
> degree, any error in the instructions of the court relating to
> murder in the first degree cannot be held prejudicial in the
> absence of a showing that the verdict of second degree
> murder was thereby affected.' 4 Strong, N.C. Index 2d,
> Homicide, § 32, p. 261. There is no such showing in this case.
> 'Also, a verdict of guilty of murder in the second degree
> renders immaterial the court's refusal to direct a verdict of
> not guilty to the capital charge.' 4 Strong, N.C. Index 2d,
> *supra. See also State v. Sallie*, 13 N.C. App. 499, 186 S.E. 2d
> 667."

We overrule this assignment of error.

    By holding that the State presented sufficient evidence to
submit this case to the jury on the offense of murder in the first
degree, it follows that the offense of murder in the second degree

was properly submitted to the jury, and the evidence properly supports a conviction by the jury.

[6] Defendant contends by Question XII that he was deprived of due process of law under the Fourteenth Amendment to the United States Constitution when the trial court charged the jury that it could infer malice and unlawfulness simply from the fact that the defendant used a deadly weapon in stabbing the deceased.

A similar charge as appears in this record set out in Question V was approved by our Supreme Court in *State v. Williams*, 288 N.C. 680, 220 S.E. 2d 558 (1975). Justice Branch stated for the Court as follows:

"We are of the opinion that when the State proves beyond a reasonable doubt that an accused intentionally inflicted a wound with a deadly weapon proximately causing death, such basic facts are sufficient to meet the most stringent of the standards of due process recognized by the Court. Establishment of the presumption requires the triers of fact to conclude that the prosecution has met its burden of proof with respect to the presumed fact by having established the required basic facts beyond a reasonable doubt. This does not shift the ultimate burden of proof from the State but actually only shifts the burden of going forward so that the defendant must present some evidence contesting the facts presumed. We, therefore, hold that the presumptions here challenged comport with due process." 288 N.C. at 689-90, 220 S.E. 2d at 566.

We find no merit in this assignment of error.

A careful review of the record fails to disclose any prejudicial error, and all other assignments of error relating to the charge are without merit.

No error.

Judges PARKER and CLARK concur.